UNITED STATES, Appellee

v.

Ermen-Rene BARNETT, Senior Airman
U.S. Air Force, Appellant

No. 12-0251

Crim. App. No. 37578

United States Court of Appeals for the Armed Forces

Argued May 15, 2012

Decided July 16, 2012

ERDMANN, J., delivered the opinion of the court, in which STUCKY
and RYAN, JJ., and COX, S.J., joined.  ERDMANN, J., filed a
separate special concurring opinion.  BAKER, C.J., filed a
separate opinion concurring in part and in the result.

Counsel

For Appellant:  Major Michael S. Kerr (argued).

For Appellee:  Captain Brian C. Mason (argued); Colonel Don M.
Christensen, Lieutenant Colonel Linell A. Letendre, and Gerald
R. Bruce, Esq. (on brief).

Military Judge:  Joseph S. Kiefer

<u>**This opinion is subject to revision before final publication.**</u>

United States v. Barnett, No. 12-0251/AF

Judge ERDMANN delivered the opinion of the court.

Senior Airman Ermen-Rene Barnett was a United States Air Force recruiter who engaged in misconduct involving several female recruits. He entered mixed pleas before a general court-martial to eight specifications of violating Article 92 (recruiter misconduct and dereliction of duty), one specification of using marijuana on divers occasions in violation of Article 112a, and three specifications of witness tampering in violation of Article 134. Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934 (2006). Barnett was found guilty of the Article 92 and Article 112a offenses and not guilty of two of the three Article 134 offenses (the other Article 134 offense was withdrawn and dismissed after arraignment). The convening authority approved the panel's adjudged sentence of reduction to E-1, confinement for eight months, and a bad-conduct discharge. The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and the sentence. United States v. Barnett, No. ACM 37578, slip op. at 8 (A.F. Ct. Crim. App. Nov. 14, 2011).

We granted review in this case to determine if the military judge properly instructed the members concerning credit ordered under the provisions of Article 13, UCMJ, 10 U.S.C. § 813

2

United States v. Barnett, No. 12-0251/AF

(2006).[1]  "The military judge has an independent duty to determine and deliver appropriate instructions."  United States v. Ober, 66 M.J. 393, 405 (C.A.A.F. 2008).  "We review issues concerning non-mandatory instructions for an abuse of discretion."  United States v. Forbes, 61 M.J. 354, 358 (C.A.A.F. 2005) (citing United States v. Damatta-Olivera, 37 M.J. 474, 478 (C.M.A. 1993)).  Under the circumstances of this case, we hold that the military judge did not abuse his discretion when instructing the members on the Article 13 confinement credit.  We also hold that the military judge was within his discretion to deny Barnett's requested instruction informing the members that they were not permitted to nullify some or all of the credit by increasing the sentence.  Therefore the decision by the CCA is affirmed.

### Background

The specific factual basis for the charges is not relevant to the issue before the court.  At some point prior to trial Barnett was removed from his recruiter duties and assigned to

---

[1] We granted review of the following issue:

> Whether the military judge abused his discretion when he informed the members of Appellant's illegal pretrial punishment credit and then failed to instruct the members based on a submitted question that they were not allowed to nullify some or all of that credit by increasing the sentence.

United States v. Barnett, No. 12-0251/AF, 2012 CAAF LEXIS 176 (C.A.A.F. Feb. 12, 2012) (order granting review).

3

perform duties with the "Thunder Pride" team at Luke Air Force Base, Arizona. The "Thunder Pride" team is a holding unit for Airmen who are under investigation, facing potential disciplinary action, or awaiting separation. Based on his assignment to the "Thunder Pride" team, Barnett moved for sentence credit under Article 13, UCMJ, alleging illegal pretrial punishment. While the military judge did not find an intent to punish, based on the sixteen-month duration of Barnett's duties with the "Thunder Pride" team (a base regulation limits assignment to the "Thunder Pride" team to sixty days unless the legal office is consulted) and the circumstances of those duties, he ordered 100 days confinement credit pursuant to Article 13.[2]

At an Article 39(a) session the military judge informed counsel that he had reviewed the sentencing instructions and while it was clear that members should be instructed about pretrial confinement credit, it was "a little more confusing when you're dealing with credit for pretrial punishment under Article 13." Following a discussion of the issue with counsel, Barnett's attorney informed the military judge that they did not want the members instructed about the Article 13 credit in any

---

[2] The appropriateness of the military judge's award of 100 days confinement credit has not been appealed by either party and that issue is not before the court.

4

manner. The military judge concluded the session by asking the parties to look for legal authority on this issue.

After findings were announced, the defense offered several sentencing exhibits that included information concerning the circumstances and duties of individuals on the "Thunder Pride" team. The Government did not object to the exhibits referencing "Thunder Pride," but argued that if the exhibits were admitted the court should instruct the members on the award of Article 13 confinement credit. The military judge asked both counsel if either of them had found any applicable law as to how to instruct members of Article 13 credit and both counsel responded in the negative. The military judge indicated at that point that he intended to give an instruction similar to the Pretrial Confinement Credit instruction in the Military Judges' Benchbook.[3] He noted that he was not aware of anything that would make that instruction applicable only to pretrial confinement and not Article 13 credit. Neither party objected at that time and the defense exhibits, including those that referenced the circumstances and duties of the "Thunder Pride" team, were admitted into evidence and published to the members.

The military judge then discussed his proposed instructions with counsel. After acknowledging the defense's earlier

---

[3] Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 2, § V, para. 2-5-22 (2010).

objection to any instruction on Article 13 credit, the military judge informed counsel that he intended to give the following instruction:

> In determining an appropriate sentence in this case, you should consider that the accused has been granted 100 days of confinement credit. If you adjudge confinement as part of your sentence, those days will be credited against any sentence to confinement you may adjudge. This credit will be given by the authorities at the correctional facility where the accused is sent to serve his confinement and will be given on a day-for-day basis.

There were no further objections to the instruction. The military judge subsequently provided that instruction to the members and also instructed them:

> In selecting a sentence, you should consider all matters in extenuation and mitigation as well as those in aggravation, whether introduced before or after your findings. Thus, all of the evidence you have heard in this case is relevant on the subject of sentencing.

During argument on sentence the Government noted that the court had already taken the conditions of "Thunder Pride" into account when it awarded Barnett 100 days of confinement credit for the time he was in "Thunder Pride." Barnett's counsel also referenced "Thunder Pride" and argued that the Government asked for twenty-four months of confinement "as if they didn't punish Airman Barnett already," and "[t]he government got their ton of flesh already and now they want it again."

Deliberation on sentencing was interrupted when the members brought a question to the military judge. The following discussion took place between the military judge (MJ) and the President of the panel (PRES):

> PRES: In your instructions that you gave us, you talked about a hundred days confinement credit. The question is, and we can expound if we need to, can we, as the members, differentiate between a hundred days of confinement for Thunder Pride versus a hundred days of confinement?

> MJ: Okay. I guess I'm not exactly clear on what your question is.

> PRES: The question is, understanding based on the defense exhibits that we were provided and knowing what Thunder Pride is and knowing that it's not actual confinement, is it okay for us to differentiate from the hundred days or do we have to consider that as confinement?

> MJ: Okay. There had been a motion for some credit that I had to take up related to the circumstances of Thunder Pride.

> MJ: And after reviewing the evidence and the issues involved in that, I determined that the accused was to be granted 100 days of credit toward any confinement that the court may adjudge. So as I instructed earlier, if the court adjudges confinement, then the 100 days credit that I granted already will be applied toward that to be applied by the correctional facility wherever the accused would go for any period of confinement.

> PRES: So legally, is it okay for us to consider that hundred days of credit less than what we would consider actual confinement? That's the question that's come up in our discussions. And maybe for ease of understanding and, please, this is just for the example, if we consider 300 days as appropriate confinement but we know the hundred days credit is there but we think that the 300 days confinement should be actual confinement so we bump it up to 400

days because we know we're going to subtract a
hundred days; is that legal for us to do that?

MJ:  What I can instruct you in this regard is that
you should determine a sentence that you believe is
appropriate for this accused for the offenses that
he's been found guilty of, considering all of the
evidence that you've been presented in the case.
You've been provided the fact or circumstance that,
if you adjudge confinement, then he will have 100
days of credit toward any period of confinement that
is adjudged by the court.

Following this exchange the military judge held an Article

39(a) session where the defense specifically requested that the

military judge instruct the members that it was their duty to

adjudge an appropriate sentence "without any consideration about

how many days of pretrial confinement [sic] credit he received"

and that the members were not allowed to increase the amount of

confinement to essentially offset the confinement credit.  The

Government opposed the specific instruction requested and

ultimately the military judge provided the following additional

instruction to the members:

    Your duty is to adjudge an appropriate sentence
for this accused that you regard as fair and just when
it is imposed and not one whose fairness depends upon
actions that others may or may not take in this case.
These instructions must not be interpreted as
indicating an opinion as to the sentence which should
be adjudged for you alone are responsible for
determining an appropriate sentence in this case.  In
arriving at your determination, you should select the
sentence which will best serve the ends of good order
and discipline, the needs of the accused, and the
welfare of society.

United States v. Barnett, No. 12-0251/AF

On appeal to the CCA, that court analogized Article 13 confinement credit with Pierce[4] credit (credit for punishment imposed pursuant to Article 15, UCMJ, for the same act or omission for which an accused faces court-martial) and held that:

> Where the appellant chose to introduce evidence of the 16 months he spent assigned to the "Thunder Pride" team as evidence in mitigation, we find the military judge had a duty to instruct the members on the administrative credit awarded so they may consider that information during their deliberation on sentence.

Barnett, No. ACM 37578, slip op. at 7. The CCA went on to hold that "[a]s in Balboa, the instruction given did not expressly or by inference invite the members to award extra confinement to compensate for the administrative confinement credit awarded . . . ." and found no error in the sentencing instructions given. Id.

## Discussion

Before this court Barnett argues that the military judge abused his discretion when he failed to properly tailor his instructions to inform the members that they could not negate or nullify the Article 13 credit that Barnett had been awarded. Barnett goes on to argue that once the military judge had

---

[4] United States v. Pierce, 27 M.J. 367 (C.M.A. 1989).

instructed the members as to the Article 13 credit, he was required to answer their question as to how they should treat that credit in their determination of an appropriate sentence. The Government responds that the military judge did not abuse his discretion in declining to provide the defense requested instruction and that he properly instructed the members on how they should treat the Article 13 credit. Even if the military judge did not properly instruct the members, the Government argues that Barnett did not suffer material prejudice to a substantial right.

> Whether the Military Judge Abused His Discretion in Initially Instructing the Members on the Award of Article 13 Credit.

After the defense evidence of pretrial punishment was admitted, the military judge gave the members an instruction informing them that Barnett had already received confinement credit for pretrial punishment. Rule for Courts-Martial (R.C.M.) 1005 addresses required instructions on sentencing. Subparagraph (a) of the rule provides that "[t]he military judge shall give the members appropriate instructions on sentence." See also Ober, 66 M.J. at 405 ("[t]he military judge has an independent duty to determine and deliver appropriate instructions"). Although an instruction on Article 13 credit is not specifically listed among the required instructions within

10

R.C.M. 1005(e), the rule does provide that instructions on sentence shall include:

> (4) A statement informing the members that they are solely responsible for selecting an appropriate sentence and may not rely on the possibility of any mitigating action by the convening or higher authority; and
>
> (5) A statement that the members should consider all matters in extenuation, mitigation, and aggravation, whether introduced before or after findings . . . .

The Discussion to R.C.M. 1005(a) goes on to provide that the "[i]nstructions should be tailored to the facts and circumstances of the individual case." See also United States v. Wheeler, 17 C.M.A. 274, 277, 38 C.M.R. 72, 75 (1967).

Once evidence of pretrial punishment was introduced during sentencing by Barnett, "in the interests of reliable and truthful sentencing,"[5] it was within the military judge's discretion to initially instruct the members of the Article 13 credit and how it would be credited.

Whether the Military Judge Failed to Answer the
Members' Question Concerning Treatment of the
Confinement Credit.

Barnett does not assert that the instruction provided by the military judge in response to the members' question was incorrect, but he does argue that the instruction provided did not answer the question. In United States v. Greaves, 46 M.J. 133, 134 (C.A.A.F. 1997), this court held that the military

---

[5] United States v. Balboa, 33 M.J. 304, 306 (C.M.A. 1991).

judged erred by "failing to correctly answer two relevant and proper questions asked by the members concerning the impact of a bad-conduct discharge on appellant's impending eligibility to retire."

Neither side is arguing that the question posed by the members was not relevant. The members' question specifically asked whether the panel could increase the sentence to offset the 100 days of credit Barnett received. The second instruction provided to the members did, in fact, address this question, although not as specifically as Barnett would have wished:

> Your duty is to adjudge an appropriate sentence for this accused that you regard as fair and just when it is imposed <u>and not one whose fairness depends upon actions that others may or may not take in this case</u>.

Emphasis added.

Under the circumstances of this case, we hold that the instruction correctly responded to the members' question. Further, nothing in the instruction invited the members, either expressly or by inference, to either impose extra confinement to offset the Article 13 credit or impose less confinement in consideration for the pretrial punishment. See <u>Balboa</u>, 33 M.J. at 307.

<u>Whether the Military Judge Abused His Discretion When He Declined to Give the Defense Requested Instruction</u>.

Barnett requested that the military judge specifically instruct the members that they could not increase the amount of

confinement to offset the confinement credit.  This court has said that "[w]hile counsel may request specific instructions, the military judge has substantial discretion in deciding on the instructions to give and whether the requested instruction is appropriate.  This discretion must be exercised in light of correct principles of law as applied to the facts and circumstances of the case."  United States v. Miller, 58 M.J. 266, 270 (C.A.A.F. 2003).

> Denial of a requested instruction is error if: (1) the requested instruction is correct; (2) "it is not substantially covered in the main charge"; and (3) "it is on such a vital point in the case that the failure to give it deprived [the] defendant of a defense or seriously impaired its effective presentation."

Id. (alteration in original) (citation omitted).  For the military judge's refusal to instruct the members as requested to be error, all three prongs of the test in Miller must be satisfied.

We believe that the issue as to how the members should consider the Article 13 credit was substantially covered in the instructions provided and therefore the military judge did not abuse his discretion in declining to give the requested instruction.  We also note, however, the difficulty inherent in the requested instruction and its potential for confusing the members.  If the military judge had instructed the members that they could not consider the Article 13 confinement credit in determining an appropriate sentence, that instruction would have

United States v. Barnett, No. 12-0251/AF

been in conflict with the standard instruction properly

informing the members that they should consider all matters in

extenuation and mitigation as well as those in aggravation in

determining an appropriate sentence.

## Decision

The decision of the United States Air Force Court of

Criminal Appeals is affirmed.

United States v. Barnett, No. 12-0251/AF

   ERDMANN, Judge (special concurrence):

   I write separately solely to note an issue that was not

raised in this case but which may have an impact on this area of

the law absent legislative or administrative clarification.

This court has held that "[t]he proper applications of credit

for illegal pretrial punishment and lawful pretrial confinement

are questions of law, reviewed de novo." United States v.

Spaustat, 57 M.J. 256, 260 (C.A.A.F. 2002). As a question of

law, therefore, whether an accused has been subject to illegal

pretrial punishment and, if so, the appropriate credit for such

illegal pretrial punishment, could be viewed as issues solely

for the military judge.

   On the other hand, this court has recognized that an

accused seeking relief from alleging pretrial punishment has a

tactical decision to make -- presenting the evidence of illegal

pretrial punishment to the members or asking the military judge

for specific relief under Article 13. United States v.

Southwick, 53 M.J. 412, 416 (C.A.A.F 2000); United States v.

Tanksley, 54 M.J. 169, 177 (C.A.A.F. 2000).[1] In Inong, we

addressed a situation where the appellant did not seek Article

13 relief from the military judge but raised the issue of

---

[1] To the extent that Southwick and Tanksley established a
"tantamount to affirmative waiver" rule for asserted violations
of Article 13 raised for the first time on appeal, they were
overruled by United States v. Inong, 58 M.J. 460, 464 (C.A.A.F.
2003).

illegal pretrial punishment to the members during his sentencing case.  58 M.J. at 462-63.  The appellant then requested Article 13 sentencing credit from the CCA on appeal.  In holding that Inong was not entitled to Article 13 relief we noted:

> [A]n appellant is not entitled to sentence credit on appeal for what is alleged to have been illegal pretrial punishment or confinement if such relief was not sought at trial, but instead, a tactical decision was made to use the complained of condition as a means of obtaining a lesser adjudged sentence.  Southwick, 53 M.J. at 416; Tanskley, 54 M.J. at 177.

Id. at 463.

The "tactical decision" discussed in these cases appears to be whether to request specific Article 13 relief from the military judge or to present the underlying facts of the illegal pretrial punishment to the members for consideration in determining an appropriate sentence.  If, however, an accused were free to pursue both forums, there would be no tactical decision to make.  While not specifically discussed in these cases, the underlying rationale for such a rule may be that if an accused opts to pursue an Article 13 motion before the military judge, the matter has been properly litigated.  If the accused is then permitted to present the same evidence in his sentencing case he is re-litigating the legal issue already decided by the military judge and creating the potential for being credited twice for the same government conduct.

I take no position on this matter as it is unnecessary for resolution of the case before us, but in the absence of legislative or administrative clarification, I merely note the issue until it is properly presented to the court.

BAKER, Chief Judge (concurring in part and in the result):

I agree with the Court's conclusion that the military judge did not abuse his discretion when he initially instructed the members regarding the Article 13, UCMJ, 10 U.S.C. § 813 (2006), credit. However, I believe that there was instructional error in this case, given the unusual questions from the members and the military judge's failure to provide a tailored instruction in response.

## DISCUSSION

Where, as in this case, the military judge has awarded credit for government conduct that has already occurred and the accused chooses to argue pretrial punishment during sentencing, the military judge should instruct the members that the accused will already be credited for the Article 13, UCMJ, violation, thus negating any concern of a double benefit to the accused. The military judge should then instruct the members that their duty is to assess a sentence appropriately based on the accused's conduct and all other relevant matters independent of any credit the accused might be entitled to under Article 13, UCMJ, based on the government's conduct. The military judge properly instructed on both matters in this case.

However, the problem arose in this case when the members asked multiple questions suggesting the possibility that they

might nullify the military judge's previous award of credit.

The president of the panel asked:

> In your instructions that you gave us, you talked to
> us about a hundred days confinement credit.  The
> question is, and we can expound if we need to, can we,
> as the members, differentiate between a hundred days
> of confinement credit for Thunder Pride versus a
> hundred days of confinement?

The military judge asked for clarification, and the member

clarified:

> The question is, understanding based on the defense
> exhibits that we were provided and knowing what
> Thunder Pride is and knowing that it's not actual
> confinement, is it okay for us to differentiate from
> the hundred days or do we have to consider that as
> confinement?

The military judge reiterated part of his previous instruction,

prompting the member to again clarify the question:

> So legally, is it okay for us to consider that hundred
> days of credit less than what we would consider actual
> confinement?  That's the question that's come up in
> our discussions.  And maybe for ease of understand
> and, please, this is just for the example, if we
> consider 300 days as the appropriate confinement but
> we know the hundred days credit is there but we think
> that the 300 days confinement should be actual
> confinement so we bump it up to 400 days because we
> know we're going to subtract a hundred days; is that
> legal for us to do that?

These questions required a tailored response rather than a

repeat of the standard instruction.  First, the questions

suggested, without confirming, that a member or members might be

inclined to nullify or negate the military judge's award of

Article 13, UCMJ, credit.  However, the question of whether an

2

accused was subject to pretrial punishment and entitled to credit is a question of law for the military judge to decide. "The proper applications of credit for illegal pretrial punishment and lawful pretrial confinement are questions of law, reviewed de novo." United States v. Spaustat, 57 M.J. 256, 260 (C.A.A.F. 2002).

Second, Article 13, UCMJ, credit is provided for conduct in which the government has already engaged. In other words, it is relief for the government's conduct, not a sentencing factor related to the accused's offenses. In this sense, pretrial punishment is different than pretrial confinement, which is offset against adjudged confinement and thus is appropriately part of the members' calculus of confinement earned by an accused based on his rather than the government's conduct.

Finally, even if the members were permitted to consider whether to nullify an accused's Article 13, UCMJ, credit because they did not agree with the amount of credit or the military judge's determination that credit was due, they could not do so without additional appropriate instructions on what legally qualifies as pretrial punishment under Article 13, UCMJ.

Thus, although the military judge was not obliged to give the specific defense requested instruction, in my view the military judge erred by not providing a more tailored instruction in response to the members' questions suggesting the

possibility of credit nullification.  Nevertheless, I would affirm this case on the ground that Appellant has not shown prejudice.  For sure, it is difficult to show prejudice given United States v. Balboa, 33 M.J. 304 (C.M.A. 1991), where the members appeared to have added an additional sixty-eight days of confinement -- the exact amount of automatic administrative credit for the accused's pretrial confinement.  Nonetheless, Balboa received no relief on appeal.

However, even if one treats the members' deliberations as immutable, much like a convening authority's discretionary judgment on clemency, and applies a "colorable showing of possible prejudice" as the standard, Appellant falls short.  See United States v. Rodriguez-Rivera, 63 M.J. 372, 384 (C.A.A.F. 2006) (citation and quotation marks omitted).  Appellant only received eight months when he could have received fifteen and a half years of confinement.  Manual for Courts-Martial, United States pt. IV, paras. 16.e.(1),(3)(B); 37.e.(1)(b) (2006).  Thus, Appellant's sentence was only a fraction of what it could have been.  Moreover, there is nothing about the sentence in this case that suggests the members in fact negated the credit awarded by the military judge.