# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39224**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Michael J. RICH**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 September 2018

————————————

*Military Judge:* Vance H. Spath.

*Approved sentence:* Dishonorable discharge, confinement for 60 days, reduction to E-2, and a reprimand. Sentence adjudged 21 December 2016 by GCM convened at Grand Forks Air Force Base, North Dakota.

*For Appellant:* Major Melissa Biedermann, USAF; Major Patricia Encarnación Miranda, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major J. Ronald Steelman III, USAF; Mary Ellen Payne, Esquire.

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges HUYGEN and POSCH joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

HARDING, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of a single specification of sexual assault by false pretense, in violation of Article 120(b)(1)(D), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(1)(D). Specifically, Appellant was found guilty of

committing a sexual act upon Airman First Class (A1C) CS by concealing his identity and thereby inducing her to believe that he was another person, specifically, her boyfriend, A1C BK.[1] Appellant was sentenced to a dishonorable discharge, confinement for 60 days, reduction to the grade of E-2, and a reprimand. The convening authority approved the adjudged sentence, but waived the mandatory forfeiture of pay and allowances during confinement for the benefit of Appellant's dependents.

Appellant raises three issues on appeal: (1) whether the military judge's instructions regarding the term "concealment" impermissibly relieved the Government of its burden to prove every element of the offense beyond a reasonable doubt; (2) whether the military judge erred by failing to instruct the court members on the defense of mistake of fact; and (3) whether the military judge abused his discretion by excluding evidence under Military Rule of Evidence 412.[2] In resolving the alleged instructional errors, we review the elements of the offense of sexual assault by false pretense and the underlying theory of criminal liability and conclude sexual assault by false pretense is a specific intent offense. We find the military judge did not abuse his discretion by providing the members with a definition of concealment or by instructing them that a permissive inference of concealment could be drawn based on evidence of silence by Appellant. The military judge did err, however, by failing to instruct the members on the defense of mistake of fact. Because this instructional error was not harmless beyond a reasonable doubt, we set aside the finding and the sentence.

## I. BACKGROUND

After spending a Friday night frequenting restaurants and bars in the sister cities of Grand Forks, North Dakota, and East Grand Forks, Minnesota, three Airman assigned to Grand Forks Air Force Base (AFB), North Dakota—A1C CS, A1C BK, and Appellant—all arrived at the Appellant's off-base apartment shortly after 0200 hours on 20 February 2016. A1C CS and her boyfriend, A1C BK, who both lived in the dormitories on Grand Forks AFB, had previously accepted Appellant's offer to sleep at his apartment instead of returning to the base after a night of drinking alcohol. Shortly after the group's arrival at Appellant's apartment, Appellant went upstairs to his bedroom to sleep while A1C CS and A1C BK shared a couch downstairs. In less than three hours,

---

[1] The specification also alleged Appellant induced A1C CS to believe he was another person by "artifice" and "pretense." The members excepted those words from the specification, finding Appellant guilty of "concealment" only.

[2] Given our resolution of the instructional error, we do not address this issue.

Appellant was due to report to Grand Forks AFB for weapons training in conjunction with an upcoming deployment.

A1C CS was uncomfortable and unable to sleep on the downstairs couch with A1C BK. The couple had been arguing earlier that night and in the presence of Appellant. After what A1C CS thought was the passing of sufficient time, she requested A1C BK go wake Appellant to ensure Appellant made it to base on time for his training. A1C BK went upstairs, woke Appellant, and then returned downstairs. Hearing nothing to indicate that Appellant was actually stirring, A1C CS again sent A1C BK to wake Appellant. A1C BK did so once more and returned downstairs. Still hearing nothing, A1C CS sent A1C BK a third time to rouse Appellant. A1C BK heard the shower running and returned downstairs. Consistent with an earlier conversation among the three Airmen that A1C CS and A1C BK could use Appellant's bed after he left for training, A1C BK and A1C CS went up to Appellant's bedroom. A1C CS got into Appellant's bed while A1C BK, thinking it would be inappropriate to get into Appellant's bed with A1C CS while Appellant was still there, decided to go back downstairs to sleep on the couch until Appellant left.

When A1C CS was in Appellant's bed, she was wearing, among other items of clothing, "jeggings"—jeans-like leggings made of denim. A1C CS fell asleep in Appellant's bed, but soon woke up to the sensation of someone tugging on her leggings. A1C CS testified that she believed A1C BK was doing the tugging, but she could not actually see who it was because the only illumination was moonlight coming through a window near the right side of the bed. According to A1C CS, she spoke A1C BK's name, but there was no response. Instead, A1C CS continued to feel the tugging on her leggings, which she described as designed to fit snug and tight around the body. Annoyed because the tugging caused her entire body to move, A1C CS took the leggings off herself. As she did so, her panties came off as well. Shortly thereafter, she felt a penis inserted into her vagina. A1C CS testified that she again spoke A1C BK's name but, as before, there was silence. According to A1C CS, other than uttering her boyfriend's name one time after she felt a penis penetrate her vagina, she "just laid there" while the intercourse lasted for up to five minutes. She testified that the person having sex with her eventually leaned down to kiss her on the mouth. It was at this point that she realized the person having sex with her was not her boyfriend. She then pushed the person into the moonlight, saw his face, realized it was Appellant, and pushed Appellant off of her. According to A1C CS, Appellant then said, "Oh s**t. I am so sorry. I am so sorry. I'm drunk. I thought you were my fiancé[e]."

## II. DISCUSSION

### A. Sexual Assault by False Pretense

#### 1. A Specific Intent Crime

At the outset we recognize that resolution of Appellant's first two assertions of error requires an assessment of the elements and specifically the *mens rea* for the offense of sexual assault by false pretense. Appellant asserts that the military judge erred by giving an instruction that the silence by Appellant may constitute "concealment" as alleged in the specification. Specifically, the military judge instructed the members that "[s]ilence when the Accused knows that [a] victim is acting under a misapprehension as to the accused's identity may constitute concealment." Although Appellant frames this error as relieving the Government of its burden to prove Appellant concealed his identity, this instruction also implicates *actual knowledge* and thus the *mens rea* necessary to commit the offense. Appellant asserts the military judge further erred by not giving an instruction on mistake of fact for the Defense. In addition to assessing whether some evidence raised mistake of fact, it matters whether the mistake of fact, if it existed, would have negated the *mens rea* necessary to commit the offense. To answer this question we must determine whether the offense of sexual assault by false pretense is a specific intent crime—one that necessarily includes elements of specific intent or knowledge—or only a general intent crime. The *mens rea* matters to the instruction.

> If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.

Rule for Courts-Martial (R.C.M.) 916(j)(1). We conclude that the offense of sexual assault by false pretense, Article 120(b)(1)(D), UCMJ, *is* a specific intent offense.

Article 120(b)(1)(D), UCMJ, in pertinent part, provides that "[a]ny person . . . who . . . commits a sexual act upon another person by . . . inducing a belief by any artifice, pretense, or concealment that the person is another person . . . is guilty of sexual assault . . . ." The *Manual for Courts-Martial, United States,* (2016 ed.) (*MCM*), pt. IV, ¶ 45.b(3)(d), captions this offense as *"[s]exual assault . . . [b]y false pretense"* and provides two elements. The first element repeats the statutory definition of a sexual act as penile penetration of the vulva, anus, or mouth. The second element directly tracks the language of Article 120(b)(1)(D), UCMJ. The listed elements are: (1) "[t]hat the accused committed

a sexual act upon another person by causing penetration, however slight, of the vulva or anus or mouth by the penis;" and (2) "[t]hat the accused did so by inducing a belief by any artifice, pretense or concealment that the accused is another person." Neither Article 120, UCMJ, nor the 2016 *MCM*, pt. IV, ¶ 45.b(3)(d), defines "inducing," "artifice," "pretense," or "concealment." The specification of sexual assault by false pretense alleged Appellant had committed the offense by artifice, pretense, and concealment.

We note there are other false pretense offenses contained within the punitive articles of the UCMJ: larceny and wrongful appropriation by wrongfully obtaining property in violation of Article 121, UCMJ, 10 U.S.C. § 921 (formerly known as obtaining by false pretense), and obtaining services by false pretenses in violation of Article 134, UCMJ, 10 U.S.C. § 934. The criminal objective of these offenses is to wrongfully obtain property or services, which would otherwise be obtained with the property owner or service provider's permission or consent, by inducing a false belief by an owner or provider in order to do so. The criminal objective of the offense of sexual assault by false pretense is to induce a false belief by a person as to an accused's identity in order to commit a sexual act upon that person, who would otherwise have consented to the act if the belief was true. We observe that while the criminal objectives are vastly different between these offenses, the means of attaining the criminal objective—to induce a false belief—is the same. Thus, we find a review of the elements and definitions for the offenses of larceny and wrongful appropriation by wrongfully obtaining property and services by false pretenses is highly instructive to a determination of what the *mens rea* of sexual assault by false pretense is, and whether it is a specific intent crime.

The aforementioned false pretense offenses of Articles 121 and 134, UCMJ, all include specific intent to defraud as an element of the offense. In particular, the elements of obtaining services by false pretenses in violation of Article 134, UCMJ, are:

> (1) That the accused wrongfully and unlawfully obtained certain services from the victim;
>
> (2) That the obtaining was by falsely pretending to the victim that a certain fact is true;
>
> (3) That at the time of the obtaining the accused had knowledge of the falsity of the pretenses;
>
> (4) That the obtaining was with the intent to defraud;
>
> (5) That the services were of a certain value; and
>
> (6) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed

forces, of a nature to bring discredit upon the armed forces, or both.

*Military Judges' Benchbook,* Dept. of the Army Pamphlet 27–9 at 842 (10 Sep. 2014). Not only does this false pretenses offense include the specific intent to defraud as an element of the offense, but the accused's knowledge of the "falsity of the pretenses" is an essential element of the offense.

For an explanation of false pretense in the context of an offense under Article 121, UCMJ, we need look no further than the 2016 *MCM*, pt. IV, ¶ 46.c(1)(e):

> *False pretense.* With respect to obtaining property by false pretense, the false pretense may be made by means of any act, word, symbol, or token. The pretense must be in fact false when made and when the property is obtained, and it must be knowingly false in the sense that it is made without a belief in its truth. A false pretense is a false representation of past or existing fact.

In addition to a false pretense for a larceny or wrongful appropriation offense committed by obtaining, an intent to steal or defraud is required. While there are obvious differences between each of these "obtaining" by false pretense offenses, the tripartite *sine qua non* of each is (1) false pretense; (2) an accused's knowledge of the falsity of the pretense at the time of the obtaining; and (3) the accused's intent to defraud in order to obtain.

Extending the approach of the "obtaining" offenses to the offense in this case, we conclude that the offense of sexual assault by false pretense under Article 120(b)(1)(D), UCMJ, necessarily includes: (1) a false pretense that the accused was another person; (2) the accused's knowledge of the falsity of the pretense that he was another person; (3) the accused's intent to induce a victim into believing that the accused was another person; and (4) the victim's false belief that the accused was another person. Thus we conclude that sexual assault by false pretense is a specific intent offense.

### 2. Military Judge Instructs Knowledge and Specific Intent

The military judge instructed the court members on the elements of the offense of sexual assault by false pretense as follows:

> In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt: (1) That . . . the accused committed a sexual act upon [A1C CS], to wit: penetrating her vulva with his penis; and, (2) That the accused did so by inducing a belief by artifice, pretense, and concealment that the accused was another person.

6

The military judge did not provide a definition of "inducing," but did define the terms "artifice," "pretense," and "concealment." "'Artifice' is a plan or idea intended to deceive. 'Pretense' is an act of pretending. 'Concealment' is an act of refraining from disclosure or hiding to prevent discovery.'"[3]

We find that the military judge's instructions correctly and sufficiently reflected that the offense of sexual assault by false pretense is a specific intent offense. While the military judge did not instruct on specific intent as an element, in defining "artifice," "pretense," and "concealment," he used words and phrases—"intended to deceive," "pretending," "refraining from disclosure," and "hiding to prevent discovery"—that connote a specific intent. Thus Appellant's specific intent was an issue that the members had to resolve. The military judge also instructed the members that "[s]ilence when the [a]ccused *knows* that [a] victim is acting under a misapprehension as to the accused's identity may constitute concealment" (emphasis added), and thereby made the actual knowledge of Appellant an issue as to concealment.[4] Having concluded that sexual assault by false pretense is a specific intent offense and the military judge's instructions reflected this, we next consider whether the military judge erred as Appellant asserts by providing the instruction on concealment or by omitting a mistake of fact instruction.

## B. Concealment Instruction

Appellant objected at trial to the military judge's findings instruction that "silence . . . may constitute concealment" and now argues that this instruction was error because it was "a presumption that permits but does not require the jury to assume intent from an isolated act (that act of remaining silent) which in turn prejudged a decision (that Appellant intended to conceal his identity) that the members should have made on their own." We disagree.

We review a military judge's decision to provide a non-mandatory instruction for an abuse of discretion. *United States v. Barnett*, 71 M.J. 248, 249 (C.A.A.F. 2012) (quoting *United States v. Forbes*, 61 M.J. 354, 358 (C.A.A.F. 2005)). We review the propriety of the instructions given by a military judge de novo. *United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001) (citing *United States v. Maxwell*, 45 M.J. 406, 424 (1996)). A "military judge has an independent duty to determine and deliver appropriate instructions." *Barnett*, 71 M.J. at 249 (quoting *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008)). While counsel may request specific "non-mandatory" instructions from

---

[3] The military judge adopted these definitions from *People v. Leal* (2009) 180 Cal. App. 4th 782, 789–90 [103 Cal. Rptr. 3d 351], involving a similar criminal statute.

[4] The military judge likewise relied on *Leal* to draft the instruction that silence may constitute concealment.

the military judge, the judge has substantial discretionary power in deciding on the instructions to give. *See Barnett*, 71 M.J. at 253 (quoting *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003)). Military judges may provide "explanations, descriptions, or directions," *sua sponte,* or "as may be necessary and which are properly requested by a party." R.C.M. 920(e)(7).

As noted above, the military judge provided the following instructions: "'Concealment' is an act of refraining from disclosure or hiding to prevent discovery. Silence when the Accused knows that [a] victim is acting under a misapprehension as to the accused's identity may constitute concealment." It is this second instruction—on the issue of silence as concealment—that Appellant asserts was essentially a mandatory presumption that relieved the Government of its burden to prove the element of inducement by concealment beyond a reasonable doubt.

To determine whether there was error, we ask whether a reasonable member could have interpreted the instruction to create a mandatory presumption of wrongfulness in favor of the Government. *See United States v. Brewer*, 61 M.J. 425, 430 (C.A.A.F. 2005). We ask whether a reasonable member could have interpreted the concealment instruction as a mandatory presumption, not a permissive inference, that Appellant's silence in response to A1C CS stating her boyfriend's name evidenced his intent to conceal his identity from her. We conclude this instruction did not mandate a presumption, but instead explained a permissive inference the court members may possibly have drawn based on evidence presented in the case.

"Inferences and presumptions are a staple of our adversary system of fact-finding." *County Court v. Allen*, 442 U.S. 140, 156 (1979). Legal presumptions are categorized as either permissive inferences or mandatory presumptions. *Francis v. Franklin*, 471 U.S. 307, 314 (1985) (citations omitted). A mandatory presumption, depending on whether it is a conclusive or rebuttable presumption, either completely removes the presumed element once the predicate facts have been proved or requires the jury to find the presumed element unless the defendant convinces the factfinder that such a finding is unwarranted. *Id.* at 314 n.2. A permissive inference, on the other hand, "allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Allen*, 442 U.S. at 157 (citation omitted).

The Constitution "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Franklin*, 471 U.S. at 313 (citing *Sandstrom v. Montana,* 442 U.S. 510, 520–24

(1979)) (additional citations omitted). A mandatory presumption is a "troublesome evidentiary device[,]" as it carries the risk of relieving the Government of its burden. *Allen*, 442 U.S. at 157. The Supreme Court has stated the converse:

> A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. Such inferences do not necessarily implicate the concerns of *Sandstrom*. A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

*Franklin*, 471 U.S. at 314–15 (citing *Allen*, 442 U.S. at 157–63).

The instruction at issue specifically stated that silence *may* constitute concealment—a permissive inference. It did not mandate that if the members decided Appellant was silent, they must presume he concealed. While the instruction could have been more explicitly given as a permissive inference emphasizing that it did not in any way relieve the Government of its burden of proof, we nonetheless conclude that (1) no reasonable member would have interpreted the instruction as a mandatory presumption and (2) the permissible inference was an instruction justified by reason and common sense in light of the evidence before the members. Thus, we find the military judge did not err by providing it.

## C. Failure to Instruct on the Defense of Mistake of Fact

Appellant also asserts that the military judge erred by failing to instruct the court members on the affirmative defense of mistake of fact. We agree and have determined the error is not harmless beyond a reasonable doubt in this case.

### 1. Error

The adequacy of a military judge's instructions is reviewed de novo. *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006) (citations omitted). "The military judge bears the primary responsibility for ensuring that mandatory instructions . . . are given and given accurately." *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003); *see also* R.C.M. 920(a). A military judge must instruct the members concerning a defense if the record contains "some evidence on each of these elements . . . ." *United States v. Jenkins*, 59 M.J. 893, 898 (Army Ct. Crim. App. 2004) (quoting *United States v. Ferguson*, 15 M.J. 12, 17 (C.M.A. 1983)) (additional citation omitted). A defense is reasonably raised when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose." *United States v.*

*Stanley*, 71 M.J. 60, 61 (C.A.A.F. 2012) (citation omitted); *United States v. Watford*, 32 M.J. 176, 178 (C.M.A. 1991) (noting a defense is reasonably raised when there is "some evidence" to which the panel members "might attach credence"). Any doubt regarding whether an affirmative defense instruction is in order should be resolved in favor of the accused. *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000) (citing *United States v. Steinruck*, 11 M.J. 322, 324 (C.M.A. 1981)).

On two separate occasions the military judge directly asked trial defense counsel whether a mistake of fact or other affirmative defense instructions would be requested. On both occasions the trial defense counsel asked for a mistake of fact instruction.

> MJ [Military Judge]: Defense Counsel, are you going to ask for a mistake of fact instruction? Is that fair?
>
> DC [Defense Counsel]: Consent and mistake of fact. We -- our position is that those are not necessarily defenses in this case. They are more of elements that have to be proven on the front end because it's a -- it's a broad charge, basically. So, the basis is specific intent.

The Government offered no position on either occasion as to whether a mistake of fact instruction was raised by the evidence, despite the testimony from A1C CS, the key Government witness, that, when she pushed off Appellant, he said, ". . . I am so sorry. I am so sorry. I'm drunk. *I thought you were my fiancé[e]."* (Emphasis added.)

Later in the trial, after the military judge had provided the parties a draft of the findings instruction by email, the military judge again asked if there were any defenses raised by the evidence that should be included in the instructions. Appellant's trial defense counsel responded as follows:

> Your Honor, I have not had a chance to look at the instructions you sent out honestly. However, with regard to mistake of fact, we believe it would be an appropriate defense -- we believe it is wrapped into the charge itself, the way that it is charged. They [the Government] have to prove that our client did not have a mistake of fact, so some language regarding mistake of fact may be appropriate.

The military judge responded:

> I don't know if mistake of fact defense works in this fact pattern. I am trying to work through it. What you will see in tonight's, is some language about voluntary intoxication. I am going to talk

to trial counsel about it in a moment. It's not necessarily an offense that involves a specific intent, but it does involve inducement, which indicates some kind of knowledge on behalf of your client. Not maybe specific intent, as we view it in premeditation, or something like that, but at least knowledge that your client has engaged in an artifice, concealment, trickery, or something like that.

Ultimately, the military judge instructed on the defense of consent and provided a voluntary intoxication instruction, which advised the members that they "should consider the effect of intoxication, if any," to determine "whether [Appellant] engaged in the inducement." The judge did not however give a mistake of fact instruction.

Notwithstanding the lack of an instruction on the defense of mistake of fact, both the trial counsel and Appellant's trial defense counsel discussed mistake of fact in their respective closing arguments. Trial counsel directly addressed a theory of mistake of fact based on a mistaken belief by Appellant that A1C CS was his fiancée.

> Now, a third possibility is that the accused was mistaken. That he really thought this was his fiancée, and we've talked about that already members. That is not a real possibility. There is no way that this accused could [have] thought that his fiancée who lived in Canada who has just had a child was in his bed wanting to have sex with him. He could tell the difference. And he wasn't too drunk to tell the difference. He certainly wasn't too drunk to tug off her pants and put his penis inside of her.

Appellant's trial defense counsel, however, did not argue Appellant mistakenly believed A1C CS was his fiancée. The trial defense counsel argued that Appellant's mistaken belief was that A1C CS knew she was having sex with *him* and consented to the sex act.

> Now, I want to talk a little bit about [Appellant] and his mistake of fact as to consent. He walks in his room and the last thing he remembers, that last thing that happened to him with regards to Airman [CS] is, she was downstairs arguing with Airman [BK]. They had been arguing all night. He offered them to sleep in his bed. And they slept on the couch. Airman [BK] comes and wakes him up. He gets in the shower. When he comes into his bedroom, she is in his bed alone. Not the guest bedroom, but in his bed. And he starts to have sex with her. She helped him take her pants off. What was he supposed to do? She says she said

[BK]. But hindsight for her, she was trying to save her relation-
ship. I don't know that I can blame her for wanting to save her
relationship.

. . . .

A full grown man is on top [of] you with his penis inside of you.
And his weight is on you. You don't think that wakes you up?
You don't think she was like, I know what's going on now. I know
who is on top of me now. No screaming, no fighting, no injuries.
We talked about the injury. She indicated she never fought with
him. And if you think that she went downstairs screaming, if you
think that the dog didn't flip out? They finished having sex. She
didn't stop it. They just had sex, and he ejaculated in her. So,
let's look at when there is a reasonable doubt with regards to his
mistake of fact as to consent. Well, obviously, all of the reasons
for consent are reasons that he too would believe, wait a second,
she consented to this.

Regardless of the differing theories argued by counsel, we need look no fur-
ther than A1C CS's testimony and the statement she attributes to Appellant—
"*I thought you were my fiancé[e]*"—to find "some evidence, without regard to its
source or credibility," that was admitted and that the court members may have
relied upon if they chose to do so. Even without this testimony of A1C CS, the
uncontroverted evidence of A1C CS's assistance in removing her leggings and
panties, combined with up to five minutes of sexual intercourse during which
A1C CS did not manifest a lack of consent, provided sufficient evidence to rea-
sonably raise the defense of mistake of fact. Notwithstanding the evidence pre-
sented, the arguments of both trial and defense counsel regarding mistake of
fact put the mistake of fact issue squarely before the members. Finally, any
doubt regarding whether an affirmative defense instruction was in order
should have been resolved in favor of Appellant, and an instruction given as
requested by the Defense. *Davis*, 53 M.J. at 205 (citing *U.S. v. Steinruck*, 11
M.J. 322, 324 (C.M.A. 1981)). It was not. For all these reasons, we conclude
that the military judge erred by not providing an instruction on the defense of
mistake of fact.

### 2. Prejudice

"Where an instructional error raises constitutional implications, this
Court has traditionally tested the error for prejudice using a 'harmless beyond
a reasonable doubt' standard." *United States v. Davis*, 73 M.J. 268, 271
(C.A.A.F. 2014) (citing *Dearing*, 63 M.J. at 482). "Whether the error is harmless
beyond a reasonable doubt is a question of law that we review de novo." *United
States v. Simmons*, 59 M.J. 485, 489 (C.A.A.F. 2004) (citation omitted). The

test for determining if the constitutional error is harmless is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). In this case, to assess harmlessness, we ask whether a rational panel could have found Appellant not guilty if they had been instructed properly. *Davis,* 73 M.J. at 273. We find that a rational panel, properly instructed, could have.

We next turn to what a proper instruction on the defense of mistake of fact would have been in this case. As discussed above, sexual assault by false pretense is a specific intent offense. Further, the permissive inference instruction provided by the military judge—"[s]ilence when the Accused knows that [a] victim is acting under a misapprehension as to the accused's identity may constitute concealment[ ]"—placed at issue Appellant's actual knowledge as to A1C CS's false belief that Appellant was her boyfriend. It is clear that Appellant's specific intent and actual knowledge were issues for the members to resolve. Whether a mistake by Appellant went to one of those issues is a separate question. We find the asserted mistakes did go to Appellant's specific intent and actual knowledge and any such a mistake would negate the *mens rea* required to commit the offense charged—sexual assault by false pretense. Thus Appellant's mistake of fact "need only have existed in [his] mind" to be a complete defense. R.C.M. 916(j)(1).

As noted above, the trial and defense counsel offered competing theories of mistake of fact during their respective closing arguments. The trial counsel sought to debunk the idea that Appellant mistakenly thought A1C CS was his fiancée. Appellant's trial defense counsel also argued mistake of fact, but asserted that Appellant mistakenly believed A1C CS knew it was him and consented to the sexual intercourse. The confluence of the evidence supporting mistake of fact, the closing arguments of both counsel on mistake of fact, and the military judge's permissive inference instruction on concealment, wherein Appellant's knowledge that A1C CS was "acting under a misapprehension" was put at issue, unmistakably required a mistake of fact instruction be given in this case—one where specific intent or actual knowledge is at issue. Thus, a properly tailored instruction for mistake of fact where specific intent or actual knowledge is at issue similar to what follows should have been provided to the members:

> The evidence has raised the issue of mistake on the part of the accused concerning: (1) a belief that A1C CS was in fact his fiancée and (2) a belief that A1C CS was aware of his identity immediately before and during the sexual act. I advised you earlier that to find the accused guilty of the offense of sexual assault by false pretense, you must find beyond a reasonable doubt that the

accused did so by inducing A1C CS to believe by artifice, pretense, and concealment that the accused was another person. Implicit in the inducement element is that by artifice, pretense, and concealment the accused had the specific intent to induce a belief by A1C CS that he was another person. If however the accused at the time of the offense was under the mistaken belief that A1C CS was in fact his fiancée or the mistaken belief that A1C CS was aware of his identity, then the accused could not have formed intent to induce A1C CS into believing that the accused was another person and thus cannot be found guilty of the offense of sexual assault by false pretense. I also advised you earlier that silence when the accused knows that a victim is acting under a misapprehension as to the accused's identity may constitute concealment. If however the accused at the time of the offense was under the mistaken belief that A1C CS was his fiancée or under the mistaken belief that A1C CS was aware of his identity, then the accused did not know that A1C CS was acting under a misapprehension as to the accused's identity and thus his silence would not constitute concealment.

You are further advised that a mistake, no matter how unreasonable it might have been, is a defense. In deciding whether the accused was under either mistaken belief, you should consider the probability or improbability of the evidence presented on the matter. The burden is on the prosecution to establish the guilt of the accused. If you are convinced beyond a reasonable doubt that at the time of the alleged offense the accused was not under either mistaken belief, then the defense of mistake does not exist.

*See Benchbook* at 1008.

Although presented in arguments that A1C CS consented or that Appellant mistakenly believed A1C consented, Appellant's trial defense counsel implicitly argued that A1C CS either knew at the time it was Appellant she was having sex with or that Appellant mistakenly believed A1C CS knew it was him and consented. As to such a mistaken belief by Appellant, there simply is no manner of legal gymnastics that can be performed to reconcile it with the *mens rea* required to commit this offense. The members were instructed on consent and thus had the proper legal framework to analyze the issue of consent. But the members who convicted Appellant were not instructed on mistake of fact and as a result never informed that the mistake did not have to be reasonable to be a defense or of the Government's burden to prove beyond a reasonable doubt that Appellant did not have that mistaken belief in order for

Appellant to be convicted. We find that a rational panel could have found Appellant not guilty if they had been instructed properly.

### III. CONCLUSION

The findings and the sentence are **SET ASIDE**. A rehearing as to the set-aside findings and sentence is authorized. Article 66(e), UCMJ, 10 U.S.C. § 866(e).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court