# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

—————————

**No. ACM 39224**

—————————

**UNITED STATES**
*Appellee*

**v.**

**Michael J. RICH**
Senior Airman (E-4), U.S. Air Force, *Appellant*

—————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 June 2019

—————————

*Military Judge:* Vance H. Spath.

*Approved sentence:* Dishonorable discharge, confinement for 60 days, reduction to E-2, and a reprimand. Sentence adjudged 21 December 2016 by GCM convened at Grand Forks Air Force Base, North Dakota.

*For Appellant:* Major Melissa Biedermann, USAF; Major Patricia Encarnación Miranda, USAF; Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Michael T. Bunnell, USAF; Major J. Ronald Steelman III, USAF; Mary Ellen Payne, Esquire.

Before THE COURT EN BANC.

Senior Judge JOHNSON delivered the opinion of the court, in which Chief Judge MAYBERRY, Judge MINK, and Judge KEY joined. Judge LEWIS filed a separate opinion dissenting in part and in the result in which Senior Judge HUYGEN, Judge DENNIS, and Judge POSCH joined.

—————————

**PUBLISHED OPINION OF THE COURT**

—————————

JOHNSON, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of sexual assault by false pretense in violation of Article 120(b)(1)(D), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(1)(D).[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for 60 days, reduction to the grade of E-2, and a reprimand. The convening authority approved the adjudged sentence but waived the mandatory forfeiture of pay and allowances during confinement for the benefit of Appellant's dependents.

Appellant raises three issues on appeal: (1) whether the military judge abused his discretion by excluding evidence under Mil. R. Evid. 412; (2) whether the military judge's instructions regarding the term "concealment" impermissibly relieved the Government of its burden to prove every element of the offense beyond a reasonable doubt; and (3) whether the military judge erred by failing to instruct the court members on the defense of mistake of fact.[2] Because the court en banc is evenly divided as to the result on a question of law with regard to the third issue, the approved findings and sentence are affirmed. *See United States v. Ohrt*, 28 M.J. 301, 302–03 (C.M.A. 1989).

## I. BACKGROUND

In February 2016, Appellant was stationed at Grand Forks Air Force Base (AFB), North Dakota. Appellant was a close friend of Airman First Class (A1C) AK, a member of Appellant's squadron. Appellant was also a friend of A1C AK's girlfriend, A1C CS, who had been dating A1C AK for approximately six months at that point. The three Airmen would often spend time together.

Appellant and A1C AK began the night of 19 February 2016 drinking alcohol and playing poker with some other co-workers and friends. Around midnight, Appellant and A1C AK left the poker game and met A1C CS at an off-base bar where she was celebrating a birthday with several of her co-workers. After the bar closed at 0200, Appellant, A1C AK, and A1C CS proceeded to Appellant's off-base apartment to sleep. At Appellant's apartment,

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The court's prior decision in this case, *United States v. Rich*, 78 M.J. 591 (A.F. Ct. Crim. App. 2018), was vacated when the court granted the Government's motion for reconsideration on 20 November 2018.

A1C CS and A1C AK continued an argument that had begun at the bar earlier in the evening. Eventually, Appellant went upstairs to his bedroom to sleep as he was due to report to Grand Forks AFB at 0530 hours for weapons training. By prior arrangement with Appellant, A1C CS and A1C AK planned to share the couch downstairs and then move to Appellant's bed after he left for training.

A1C CS was uncomfortable and unable to sleep on Appellant's downstairs couch. After A1C CS thought sufficient time had passed, she requested A1C AK go upstairs to wake Appellant to ensure Appellant made it to the base on time. A1C AK went upstairs, woke Appellant, and then returned downstairs. When A1C CS heard nothing to indicate that Appellant was actually stirring, she again sent A1C AK to wake Appellant. A1C AK did so once more and again returned downstairs. Still hearing nothing, A1C CS sent A1C AK a third time to rouse Appellant. A1C AK heard the shower running and returned downstairs. Consistent with their earlier agreement, A1C AK and A1C CS went up to Appellant's bedroom. A1C CS got into Appellant's bed while A1C AK, thinking it would be inappropriate to get into Appellant's bed with A1C CS while Appellant was still at home, decided to go back downstairs to sleep on the couch until Appellant left.

A1C CS fell asleep in Appellant's bed, but soon woke up to the sensation of someone tugging on her pants. A1C CS testified that she believed her boyfriend A1C AK was doing the tugging, but she could not actually see who it was because the only illumination was moonlight coming through a window near the right side of the bed. According to A1C CS, she was "mad" at being awoken, and she spoke A1C AK's name in a "nice, loud tone." There was no response. Instead, A1C CS continued to feel the tugging on her pants. Annoyed because the tugging caused her entire body to move, A1C CS testified she "took one pant leg off" and her underwear "came down together" with it. Shortly thereafter, she felt a penis inserted into her vagina. A1C CS testified that she spoke A1C AK's name again in a louder, "more agitated" tone than the first time, but there was no response and the intercourse continued. Thereafter, A1C CS "just laid there" while the intercourse lasted for what she estimated to be up to five minutes. She testified that the person having sex with her eventually leaned down to kiss her on the mouth. It was at this point that A1C CS realized the person having sex with her was not her boyfriend, A1C AK. She then pushed the person into the moonlight, saw his face, realized it was Appellant, and pushed Appellant off of her. According to A1C CS, Appellant then said, "Oh s**t. I am so sorry. I am so sorry. I'm drunk. I thought you were my fiancé[e]." Appellant then said "Don't tell [A1C AK]. Don't tell [A1C AK]."

A1C CS grabbed her underwear, ran downstairs, and "screamed" at A1C AK to wake up. A1C CS returned upstairs to get her pants, then went back downstairs to A1C AK and screamed at him that she "wanted to go" and that Appellant "had just been inside [her]." Although A1C AK perceived A1C CS was "incredibly frantic" and she "pleaded" with him that she "wanted to leave immediately," once A1C AK understood what A1C CS was saying he went upstairs to look for Appellant. A1C AK looked in both Appellant's bedroom and the upstairs bathroom but did not see Appellant. A1C AK and A1C CS then departed Appellant's residence. A1C AK drove A1C CS back to Grand Forks AFB where A1C AK reported the sexual assault to the Security Forces personnel at the gate. In the meantime, Appellant drove to the base for weapons training, stopping to buy donuts on the way.

## II. DISCUSSION

### A. Mil. R. Evid. 412

#### 1. Additional Background

At trial, the Defense attempted to introduce evidence of A1C CS's alleged sexual behavior[3] with A1C AK under the "constitutionally required" exception to Mil. R. Evid. 412. The Defense's theory for admissibility of the proffered evidence was premised on substantial differences between A1C CS's typical sexual practices prior to sexual intercourse with A1C AK compared to what happened with Appellant. The Defense argued that the constitutionally required exception permitted them to explore each of these substantial differences to show that A1C CS knew she was having sexual intercourse with Appellant and not A1C AK.

The Government and A1C CS, through counsel, did not object to the admission of evidence showing that the sexual encounter with Appellant was different and more aggressive than what A1C CS would have expected with A1C AK. However, both objected to further attempts by the Defense to explore A1C CS's specific sexual behaviors with A1C AK.

The military judge conducted a closed hearing pursuant to Mil. R. Evid. 412(c)(2) at which A1C CS testified. A1C CS described the "tugging of the pants" as different and more aggressive than what she experienced with A1C

---

[3] The trial transcript, appellate exhibits, and briefs addressing this excluded evidence were sealed pursuant to Mil. R. Evid. 412(c)(2) and R.C.M. 1103A. These portions of the record and brief remain sealed. Any discussion of sealed material in this opinion is limited to what is necessary for our analysis. *See* R.C.M. 1103A(b)(4).

AK, who "would have never woken me up . . . out of my sleep." The military judge's written ruling permitted the Defense to point out that A1C CS and A1C AK were involved in a physical relationship. Additionally, the Defense could explore the "aggressive tugging and waking [A1C CS] for sex" to argue that A1C CS should have "realized immediately that this was not [A1C AK]." The military judge determined that the "remainder of her prior sex life" with A1C AK was not helpful or required under Mil. R. Evid. 412. The military judge found "cross-examination into the very specific details of the prior sex life would not yield anything needed to defend the charge in this case. It is the very information [Mil. R. Evid] 412 is designed to exclude."

During the Defense's cross-examination in front of the court members, A1C CS testified: (1) A1C AK "would never have taken my pants off when I was asleep;" (2) the tugging on her pants was "a little more aggressive" than the behavior she experienced with A1C AK; (3) there was no foreplay with Appellant; and (4) the lack of foreplay was "for the most part" different than what she experienced with A1C AK.

On appeal, Appellant contends that differences between A1C CS's sexual practices with A1C AK and her interaction with Appellant cast doubt on A1C CS's claim that she did not consent to having sex with Appellant. Appellant describes this evidence as relevant, vital, and material with a high probative value as to whether A1C CS knew or should have known Appellant was not her boyfriend. Appellant also argues the evidence proves A1C CS's motive to fabricate as it shows she knowingly and willfully cheated on her boyfriend and then attempted to cover up her misconduct. Appellant argues the "more distinct A1C CS's sexual history with her boyfriend is," the more likely it is that she knew she was having sex with Appellant.

**2. Law**

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be re-

versed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted). The application of Mil. R. Evid. 412 to proffered evidence is a legal issue that appellate courts review de novo. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010) (citation omitted).

Mil. R. Evid. 412 provides that, in any proceeding involving an alleged sexual offense, evidence offered to prove the alleged victim engaged in other sexual behavior or has a sexual predisposition is generally inadmissible, with three limited exceptions, one of which is pertinent to this case. The burden is on the defense to overcome the general rule of exclusion by demonstrating an exception applies. *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998) (citation omitted).

Mil. R. Evid. 412(b)(1)(C) provides that evidence of an alleged victim's other sexual behavior or sexual predisposition is admissible if its exclusion "would violate the constitutional rights of the accused." This exception includes an accused's Sixth Amendment[4] right to confront witnesses against him, including the right to cross-examine and impeach those witnesses. *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011) (citation omitted). Generally, such evidence is constitutionally required and "must be admitted within the ambit of [Mil. R. Evid.] 412(b)(1)(C) when [it] is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Id.* (citation omitted). Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to determining the case more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Materiality "is a multi-factored test looking at 'the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue.'" *Ellerbrock*, 70 M.J. at 318 (alteration in original) (citations omitted). The dangers of unfair prejudice to be considered "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

"[T]rial judges retain wide latitude . . . to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice . . . or interrogation that is repetitive or only marginally relevant." *United States v. Gaddis*, 70 M.J. 248, 256 (C.A.A.F. 2011) (first omission in

---

[4] U.S. CONST. amend. VI.

original) (additional citations omitted) (quoting *Van Arsdall*, 475 U.S. at 679). In determining whether the exclusion of evidence deprived Appellant of a fair trial or an opportunity for cross-examination, we ask whether "[a] reasonable jury might have received a significantly different impression of [the witness]'s credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680. "[O]nce the defendant has been allowed to expose a witness's motivation in testifying, 'it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury.'" *United States v. James*, 61 M.J. 132, 136 (C.A.A.F. 2005) (citation omitted).

### 3. Analysis

The military judge ultimately permitted the Defense to explore two areas of prior sexual behavior between A1C CS and A1C AK to support a defense that A1C CS knew or should have known that she was having sex with Appellant. First, the military judge allowed the Defense to explore fully the behavior which occurred first in the sequence of events and included Appellant waking up A1C CS during sleep by somewhat aggressively tugging on her pants. This was the most probative evidence for the Defense as it was the earliest indication that A1C CS knew or should have known it was Appellant and not A1C AK in the bedroom. The parties, A1C CS through her counsel, and the military judge concurred on the admissibility of this evidence under Mil. R. Evid. 412(b)(1)(C).

The second area involved foreplay. A1C CS testified there was no foreplay with Appellant and that fact was, "for the most part," different than her relationship with A1C AK. The military judge did not allow the Defense to further explore this line of questioning. While another military judge may have permitted additional questioning, we find the military judge did not abuse his discretion by limiting cross-examination of A1C CS in this second area. While evidence of foreplay differences had some relevance under Mil. R. Evid. 401, we agree with the military judge that the *specific acts* were not material under the facts of this case. As A1C CS and A1C AK did not always engage in foreplay in the same way prior to sex, any attempt to compare their past sexual practices to the lack of foreplay with Appellant would have added little to the Defense's presentation.

The Defense was able to use the evidence that was admitted under Mil. R. Evid. 412 in conjunction with other evidence to support its argument that A1C CS knew or should have known that Appellant was the one in bed with her. One example of such other evidence is testimony that A1C AK took several smoke breaks at Appellant's apartment before going to sleep on the couch. The Defense contrasted how a smoker would smell with how Appellant would smell having just emerged from a shower. The Defense used a Power-

Point slide in closing argument to propose ten reasons why the evidence supported a conclusion that A1C CS consented to sex with Appellant. One such reason was A1C CS's testimony that A1C AK "feels and acts different" from Appellant. Thus the military judge's Mil. R. Evid. 412 ruling did not prevent the Defense from presenting its argument that Appellant's behavior during the encounter would have indicated to A1C CS that he was not A1C AK.

We find that further exploration into the specifics of A1C CS's typical foreplay with A1C AK would have only been marginally relevant, repetitive based on the evidence admitted, and harassing to A1C CS. We conclude the military judge properly imposed reasonable limits on cross-examination based on these concerns. No reasonable court member would have received a significantly different impression of whether A1C CS knew or should have known she was having sexual intercourse with Appellant had defense counsel been permitted additional cross-examination. Appellant received the full benefit of effective cross-examination, and his trial defense counsel explored thoroughly A1C CS's motives, biases, and inconsistencies. Therefore, the contested evidence was not constitutionally required, it did not qualify for the Mil. R. Evid. 412(b)(1)(C) exception, and the military judge did not abuse his discretion by excluding it under Mil. R. Evid. 412.

## B. Concealment Instruction

### 1. Additional Background

The military judge instructed the court members that the elements of the Specification of the Charge included the following:

> (1) That at or near Grand Forks, North Dakota, on or about 20 February 2016, [Appellant] committed a sexual act upon [A1C CS], to wit: penetrating her vulva with his penis; and, (2) That [Appellant] did so by inducing a belief by artifice, pretense, and concealment that [Appellant] was another person.

The military judge then proceeded to define and explain several of the terms included in these elements. The military judge defined "concealment" as "an act of refraining from disclosure or hiding to prevent discovery." *See People v. Fleming*, 25 Cal.App.5th 783, 791–92 (Cal. Ct. App. 2018). The military judge further instructed—over the Defense's objection—that "[s]ilence when the Accused knows that the victim is acting under a misapprehension as to the accused's identity may constitute concealment." In overruling the Defense's objection that this instruction "[w]ent beyond simply defining the term," the military judge explained, "I think it's important to frame the evidence for the members. It's my duty to do that."

### 2. Law

We review a military judge's decision to provide a non-mandatory instruction for an abuse of discretion. *United States v. Barnett*, 71 M.J. 248, 249 (C.A.A.F. 2012) (quoting *United States v. Forbes*, 61 M.J. 354, 358 (C.A.A.F. 2005)). We review the propriety of the instructions given by a military judge de novo. *United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001) (citing *United States v. Maxwell*, 45 M.J. 406, 424 (1996)). A "military judge has an independent duty to determine and deliver appropriate instructions." *Barnett*, 71 M.J. at 249 (quoting *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008)). "Instructions on findings shall include . . . [s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given." Rule for Courts-Martial (R.C.M.) 920(e), (7).

"Inferences and presumptions are a staple of our adversary system of fact-finding." *County Court v. Allen*, 442 U.S. 140, 156 (1979). In order to determine whether a challenged instruction unconstitutionally relieves the Government of its burden of proof, a court must "determine whether the challenged portion of the instruction creates a mandatory presumption . . . or merely a permissive inference." *Francis v. Franklin*, 471 U.S. 307, 314 (1985) (citations omitted).

There are two possible mandatory presumptions: a conclusive presumption and a rebuttable presumption. A conclusive presumption completely removes the presumed element once the predicate facts have been proved. *See id*. at 314 n.2 (citation omitted). A rebuttable presumption requires the jury to find the presumed element unless the accused convinces the factfinder that such a finding is unwarranted. *Id*. A mandatory presumption is a "troublesome evidentiary device[,]" as it carries the risk of relieving the Government of its burden. *Allen*, 442 U.S. at 157. The Constitution "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Franklin*, 471 U.S. at 313 (citing *Sandstrom v. Montana*, 442 U.S. 510, 520–24 (1979)) (additional citations omitted).

"The most common evidentiary device is the entirely permissive inference or presumption which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Allen*, 442 U.S. at 157 (citation omitted). The Supreme Court has stated:

> A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. Such inferences do not necessarily

implicate the concerns of *Sandstrom*. A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

*Franklin*, 471 U.S. at 314–15 (citing *Allen*, 442 U.S. at 157–63).

"If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole." *Id.* at 315. "This analysis 'requires careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.'" *Id.* (quoting *Sandstrom*, 442 U.S. at 514); *see also United States v. Brewer*, 61 M.J. 425, 430 (C.A.A.F. 2005).

### 3. Analysis

Appellant argues on appeal that the military judge's instruction relieved the Government of its burden to prove beyond a reasonable doubt that Appellant concealed his identity from A1C CS. We find the instruction allowed the members to make a constitutionally allowable permissive inference based on the evidence. We conclude the military judge did not abuse his discretion by giving the instruction.

The instruction at issue specifically stated that silence *may* constitute concealment when the accused knows the victim is acting under a misapprehension. It did not mandate a presumption that if the court members decided Appellant was silent, they must conclude he concealed his identity. The instruction also did not create a rebuttable presumption requiring Appellant to convince the court members that his silence was not because he was concealing his identity but due to some innocuous reason, such as Appellant failing to hear A1C CS when she spoke A1C AK's name. The instruction given by the military judge placed no burden at all on Appellant. The instruction did not implicate either of the two mandatory presumptions recognized in case law. What the instruction did do was explain one way the members could apply the facts in this case to the relevant law, if they chose to do so.

We considered the Government's proposition that the instruction was a mere "explanation, description, or direction" under R.C.M. 920(e)(7). There is some support for the Government's position as the military judge described his instruction on the record as framing the evidence for the members. Nevertheless, we instead conclude that the instruction as given established a permissive inference allowing the members to conclude, under the law, that si-

lence by Appellant, in the circumstances of this case, may have constituted concealment.

Permissive inferences may violate due process when the suggested conclusion is not one that "reason and common sense justify in light of the proven facts" before the members. *See Franklin*, 471 U.S. at 314–15 (citation omitted). We find the suggested conclusion in the concealment instruction given in Appellant's case was based on reason and common sense and justified by the evidence presented in Appellant's case. The military judge addressed when silence may constitute concealment, identified the specific knowledge Appellant must have before the inference could be used, and ensured the members understood how evidence of Appellant's voluntary intoxication impacted the permissive inference.

Appellant contends the military judge's concealment instruction runs afoul of the following Supreme Court explanation of impermissible presumptions:

> "*It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act.* It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts. . . . *A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. . . .* [T]his presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime."

*Sandstrom*, 442 U.S. at 522 (quoting *Morissette v. United States*, 342 U.S. 246, 274–75 (1952)) (second emphasis added). Appellant argues that, contrary to *Sandstrom* and *Morissette*, the military judge's concealment instruction is a "presumption" that "permits but does not require" the court members to "assume intent" from the "isolated act" of remaining silent. However, as described above, a presumption—whether mandatory or rebuttable—is distinct from a permissible inference, and, in this case, the concealment instruction created the latter rather than the former. The military judge did not instruct the members to "presume" or "assume" any intent from the evidence of Appellant's silence; he merely explained that, under the law, Appellant's silence if he knew the victim was under a misapprehension as to his identity *may* constitute concealment as the military judge had defined that term. The court members were still required to decide on their own whether Appellant actually engaged in concealment, that is, "an act of refraining from disclosure or hiding to prevent discovery."

The military judge might have more explicitly emphasized that the permissive inference did not in any way relieve the Government of its burden of proof. We nonetheless conclude that no reasonable court member could have interpreted the concealment instruction in a manner that would have violated Appellant's due process rights or shifted the burden of proof, especially in the context of the military judge's instructions as a whole. Thus, we conclude the military judge did not abuse his discretion by providing the concealment instruction.

## C. Instructions and Mistake of Fact

### 1. Additional Background

Prior to opening statements, the military judge alerted counsel for both parties that he intended to send them a "very draft series of instructions" to "start the discussion," although "there [was] not a ruling in any way" at that point. He then engaged in the following colloquy with trial defense counsel:

> MJ [Military Judge]: Defense Counsel, are you going to ask for a mistake of fact instruction? Is that fair?
>
> DC [Defense Counsel]: Yes sir.
>
> MJ: Okay, that helps. Again, I'm not ruling on any of this. It's just that it will help me as I work towards it.
>
> DC: Consent and mistake of fact. We -- our position is that those are not necessarily defenses in this case. They are more of elements that have to be proven on the front end because it's a -- it's a broad charge, basically. So, the basis is specific intent.
>
> MJ: That just helps me as a [sic] craft and finalize the instructions. . . .

Evidence of two possible mistaken beliefs on Appellant's part was elicited during the course of trial. First, during direct examination A1C CS testified that after she pushed Appellant off her, Appellant said, ". . . I am so sorry. I am so sorry. I'm drunk. I thought you were my fiancé[e]."[5] Second, during cross-examination of A1C CS, the Defense explored whether the events of the evening in general and during the sexual encounter in particular would have led Appellant to believe A1C CS knew it was him and not her boyfriend A1C AK.

---

[5] Appellant repeated this claim later that morning, telling a co-worker "[Appellant] was expecting his fiancée; got in bed [with A1C CS]. And it wasn't who he was thinking it was."

At the conclusion of the presentation of evidence, the military judge asked counsel if there were any defenses raised by the evidence that should be included in the instructions. As previously forecast, the military judge had emailed a draft set of instructions to the parties the prior evening. Appellant's trial defense counsel responded:

> Your Honor, I have not had a chance to look at the instructions you sent out honestly. However, with regard to mistake of fact, we believe it would be an appropriate defense -- we believe it is wrapped into the charge itself, the way that it is charged. They [the Government] have to prove that our client did not have a mistake of fact, so some language regarding mistake of fact may be appropriate. However, you may have already included it, and I just haven't looked at it.

The military judge responded: "I hadn't, because I don't know if mistake of fact defense works in this fact pattern. I am trying to work through it."

Shortly after this discussion, the court recessed for the evening with a plan for the military judge to email a second draft of his findings instructions and for the parties to email him any suggested changes. The Defense emailed an objection to the concealment instruction, as discussed above in section II.B. However, although the military judge had not added any instructions regarding mistake of fact, trial defense counsel did not object to the proposed instructions on that basis, nor did they propose any instructions on mistake of fact.

At the Article 39(a), UCMJ, 10 U.S.C. § 839(a), session the next morning, the military judge asked the Defense if they had "[a]ny additional objections or requests for additional instructions." Trial defense counsel replied, "No, Your Honor," and then requested that their email sent the prior evening stating their objection to the concealment instruction be included in the record. The defense email was duly marked as an appellate exhibit. The trial counsel never commented, at any point, on whether the military judge was required to give any mistake of fact instruction.

The military judge instructed the court members, *inter alia*, on the elements of the offense of sexual assault and related definitions and instructions:

> In order to find [Appellant] guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt: (1) That at or near Grand Forks, North Dakota, on or about 20 February 2016, [Appellant] committed a sexual act upon [A1C CS], to wit: penetrating her vulva with his penis; and, (2) That [Appellant] did so by inducing a belief by artifice,

pretense, and concealment that [Appellant] was another person.

. . . "Artifice" is a plan or idea intended to deceive. "Pretense" is an act of pretending. "Concealment" is an act of refraining from disclosure or hiding to prevent discovery. Silence when [Appellant] knows that [sic] victim is acting under a misapprehension as to [Appellant's] identity may constitute concealment.

The evidence has raised the issue of whether [A1C CS] consented to the sexual conduct listed in the Specification of the Charge. All of the evidence concerning consent to the sexual conduct is relevant and must be considered in determining whether the government has proven that the sexual conduct was done by inducing a belief by artifice, pretense, and concealment that [Appellant] was another person beyond a reasonable doubt. Stated another way, evidence the alleged victim consented to the sexual conduct, either alone or in conjunction with the other evidence in this case, may cause you to have a reasonable doubt as to whether the government has proven that the sexual conduct was done by inducing a belief by artifice, pretense, and concealment that [Appellant] was another person.

The military judge also instructed the members that "[t]he evidence may have raised the issue of voluntary intoxication." He advised:

[E]vidence the accused was intoxicated, may . . . cause you to have a reasonable doubt the accused engaged in the inducement [by artifice, pretense, and concealment]. . . . On the other hand, the fact that a person may have been intoxicated at the time of the offense does not necessarily indicate that he did not engage in the inducement as defined above because a person may be drunk yet still be aware at the time of his actions and their probable consequences. . . . If you are convinced beyond a reasonable doubt that the accused in fact engaged in the inducement as defined above, the accused will not avoid criminal responsibility because of voluntary intoxication.

During closing argument, trial counsel addressed, *inter alia*, Appellant's statement to A1C CS, "I'm drunk. I thought you were my fiancé[e]."

Now, a third possibility is that the accused was mistaken. That he really thought this was his fiancée, and we've talked about that already members. That is not a real possibility. There is no way that this accused could [have] thought that his fiancée

14

> who lived in Canada who has just had a child was in his bed wanting to have sex with him. He could tell the difference. And he wasn't too drunk to tell the difference. He certainly wasn't too drunk to tug off her pants and put his penis inside of her.

> He certainly wasn't too drunk to figure out, right after it happened I better say don't tell [A1C AK]. He wasn't too drunk to put himself somewhere where nobody could find him when they came to look for him. He wasn't too drunk to drive to base, to go get donuts. And he wasn't too drunk to go fire a weapon. . . .

Trial defense counsel did not argue Appellant mistakenly believed A1C CS was his fiancée; instead, he argued that Appellant potentially mistakenly believed that A1C CS knew she was having sex with him and that she consented to the sexual intercourse.[6]

> Now, I want to talk a little bit about [Appellant] and his mistake of fact as to consent. He walks in his room and the last thing he remembers, that last thing that happened to him with regards to [A1C CS] is, she was downstairs arguing with [A1C AK]. They had been arguing all night. He offered them to sleep in his bed. And they slept on the couch. [A1C AK] comes and wakes him up. He gets in the shower. When he comes into his bedroom, she is in his bed alone. Not the guest bedroom, but in his bed. And he starts to have sex with her. She helped him take her pants off. What was he supposed to do?

> . . . .

> A full grown man is on top [of] you with his penis inside of you. And his weight is on you. You don't think that wakes you up? You don't think she was like, I know what's going on now. I know who is on top of me now. No screaming, no fighting, no injuries. We talked about the injury. She indicated she never fought with him. And if you think that she went downstairs screaming, if you think that the dog didn't flip out? They finished having sex. She didn't stop it. They just had sex, and he ejaculated in her. So, let's look at when there is a reasonable doubt with regards to his mistake of fact as to consent. Well,

---

[6] The Defense offered this as an alternative to its primary theory that A1C CS in fact knew it was Appellant and engaged in consensual sexual intercourse with him.

> obviously, all of the reasons for consent are reasons that he too would believe, wait a second, she consented to this.

The court members found Appellant guilty of the Charge and Specification, excepting the words "artifice" and "pretense," of which they found Appellant not guilty. Thus, Appellant was found guilty of committing sexual assault against A1C CS by "concealment that [Appellant] was another person."

**2. Law**

The adequacy of a military judge's instructions is reviewed de novo. *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006) (citations omitted). Whether the evidence reasonably raises a required findings instruction under R.C.M. 920(e) is also a question of law we review de novo. *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017) (citations omitted). However, if an accused fails to preserve an instructional error by an adequate objection or request, we test for plain error, even for "required" instructions. *Id.* "Under a plain error analysis, the accused 'has the burden of demonstrating that (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014) (quoting *United States v. Tunstall*, 72 M.J. 191, 193–94 (C.A.A.F. 2013)). "[M]erely requesting an instruction is ordinarily not sufficient to preserve a claim of error . . . . There must be an objection no later than after the instructions are given and before the court is closed for deliberations, stating that the instructions did not adequately cover the matters raised in the requested instruction." *United States v. Maxwell*, 45 M.J. 406, 426 (C.A.A.F. 1996) (citing R.C.M. 920(f)) (additional citations omitted).

The military judge's instructions on findings "shall include . . . [a] description of any special defense under R.C.M. 916 in issue . . . ." R.C.M. 920(e)(3).[7] "Defenses" under R.C.M. 916 "include[ ] any special defense which, *although not denying that the accused committed the objective acts constituting the offense charged*, denies, wholly or partially, criminal responsibility for those acts." R.C.M. 916(a) (emphasis added). R.C.M. 916(j) provides in pertinent part: "[I]t is [generally] a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the ac-

---

[7] To a significant extent, the terms "defense," "special defense," and "affirmative defense" appear to be used interchangeably in various legal authorities to reference the specific defenses enumerated in R.C.M. 916. *See United States v. Feliciano*, 76 M.J. 237, 239 n.1 (C.A.A.F. 2017). Here, we employ the term "special defense" to refer generally to defenses governed by R.C.M. 916.

cused would not be guilty of the offense." Thus, mistake of fact "is a defense when it negatives the existence of a mental state essential to the crime charged." *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (quoting Wayne R. LaFave, Substantive Criminal Law, § 5.6(a), at 395 (2d ed. 2003)) (additional citation omitted). However, "[w]hether an instruction on a possible defense is warranted in a particular case depends upon the legal requirements of that defense and the evidence in the record." *United States v. Jones*, 49 M.J. 85, 90 (C.A.A.F. 1998).

"[A]ny party may request that the military judge instruct the members on the law as set forth in the request." R.C.M. 920(c). However, the military judge has substantial discretionary power in deciding what non-required instructions to give. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citing R.C.M. 920(c), Discussion; *United States v. Smith*, 34 M.J. 200 (C.M.A. 1992)). Denial of a defense-requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 345–46 (C.A.A.F. 2007) (citations omitted). We apply a three-part test to evaluate whether the failure to give a requested instruction is error: "(1) [the requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [Appellant] of a defense or seriously impaired its effective presentation." *Id.* at 346 (first and second alteration in original) (quoting *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003)). All three prongs of the test must be satisfied in order to find error. *Barnett*, 71 M.J. at 253.

### 3. Analysis

#### a. Was the issue preserved?

The first question to be answered is whether trial defense counsel preserved the issue of the military judge's failure to provide instructions on mistake of fact. We conclude they did not preserve the issue.

At best, the Defense merely requested some instruction on mistake of fact, and a mere request "is ordinarily not sufficient to preserve a claim of error." *Maxwell*, 45 M.J. at 426. Trial defense counsel's brief colloquy with the military judge before opening statements was not a request for an instruction but merely to provide the military judge situational awareness as to what instructions the Defense was likely to request in the future. Trial defense counsel's tepid suggestion at the conclusion of evidence that "some language regarding mistake of fact may be appropriate" might generously be interpreted as a request for an instruction. However, at no point did trial defense counsel identify a particular instruction or propose "some language" that he believed was "appropriate." After the military judge responded that he was unsure whether a mistake of fact instruction "worked" in this case and was "trying to

work through it," trial defense counsel never raised such an instruction again. Significantly, the Defense did not object when the military judge did not include a mistake of fact instruction in the findings instructions. By contrast, trial defense counsel objected in writing to the military judge's instruction on concealment and specifically requested the email containing that objection be included in the record as an appellate exhibit.

The holding of the United States Court of Appeals for Armed Forces (CAAF) in *United States v. Killion*, 75 M.J. 209 (C.A.A.F. 2016), does not indicate a different conclusion. In *Killion*, the CAAF acknowledged the general rule that a request for an instruction is ordinarily insufficient to preserve a claim of instructional error. *Id.* at 214 (quoting *Maxwell*, 45 M.J. at 426). However, the CAAF emphasized that *Killion* was "not an ordinary case" and excused the trial defense counsel's apparent failure to object based on the particular circumstances. *Id.* Specifically, the trial defense counsel provided the military judge an extensive proposed instruction, "complete with citation to supporting legal authority, [that] was specifically tailored to the circumstances presented in [the] case and gave the military judge the opportunity to correct any error in his panel instructions at trial." *Id.* Furthermore, "[t]he military judge demonstrated his awareness of defense counsel's specific grounds for the alternative instruction, flatly disagreed with him, and there is no indication that further objection was likely to be successful." *Id.* By contrast, Appellant's trial defense counsel identified no proposed instruction, much less instructions specifically tailored to the case and supported by legal authority. Furthermore, the military judge did not "flatly reject" the idea of such an instruction but indicated he was still considering the matter; the Defense simply let the matter drop at that point.

Quite unlike *Killion*, in the instant case trial defense counsel's advocacy for a mistake of fact instruction was distinguished by its equivocal, non-specific, and half-hearted nature. To find the Defense adequately preserved this issue on appeal would be to disregard the plain language of R.C.M. 920(f) and clear precedent from the CAAF.[8] Accordingly, we review the military judge's decision not to provide specific instructions on mistake of fact for plain error.

---

[8] We recognize our authority under Article 66, UCMJ, 10 U.S.C. § 866, to grant relief for a legal error in spite of an appellant's failure to preserve an issue for appeal. *See United States v. Hardy*, 77 M.J. 438, 443 (C.A.A.F. 2018). However, we find no such exercise of our authority to disregard Appellant's failure to preserve the issue is warranted in this case.

### *b. Was a mistake of fact instruction required by R.C.M. 920(e)?*

The next question we must resolve is whether some instruction on mistake of fact was a required findings instruction under R.C.M. 920(e). We conclude that, under the particular circumstances of this case, it was not.

R.C.M. 920(e)(3) provides that the military judge must provide a "description of any special defense under R.C.M. 916 *in issue*." (Emphasis added). Mistake of fact is, of course, a special defense under R.C.M. 916. *See* R.C.M. 916(j). However, whether an accused's possible mistake of fact is "in issue" *as a special defense* depends on the evidence *and* the legal requirements of the defense as they apply to the circumstances of the particular case. *See Jones*, 49 M.J. at 90. A "special defense" is a defense that does "not deny[ ] that the accused committed the objective acts constituting the offense charged," but nevertheless denies in whole or part the accused's criminal responsibility for those acts. R.C.M. 916(a). If a defense *does* deny the accused committed the acts that constitute the charged offense, such a defense may demonstrate the accused is not guilty of the charge, but it is not operating as a "special defense" as that term is used in R.C.M. 916 and R.C.M. 920(e)(3).

Thus, mistake of fact operates as a special defense where the Government may have proven the accused committed all of the acts alleged in the specification of a charge, but, because of a mistake, the accused lacked the necessary *mens rea* to be criminally responsible for the offense. *See Goodman*, 70 M.J. at 399. Conversely, if the existence of a mistaken belief disproves an element of the charged offense, proof of the mistake will still exonerate the accused by proving the alleged criminal act never took place, rather than by denying the accused's criminal responsibility because of a *special* defense, notwithstanding the facial truth of the allegation. In either situation, evidence of such a mistake may be of equally critical importance to the outcome of the trial. However, in the latter situation, mistake of fact is "in issue" as a special defense; in the former situation, it is not.

Our sister court addressed an analogous situation in *United States v. Teague*, 75 M.J. 636 (A. Ct. Crim. App. 2016). There, the Government charged the appellant with committing a sexual assault on a victim who was incapable of consenting due to impairment by an intoxicant, a condition that was known or reasonably should have been known to the appellant. *Id.* at 637. On appeal, the defense argued the findings of guilty were legally and factually insufficient because the Government failed to prove the "appellant did not have an actual and reasonable mistake of fact as to consent." *Id.* at 637–38 (internal quotations omitted). The court rejected this argument, concluding that "mistake of fact as to consent can never be 'in issue' under R.C.M. 920(e)(3) with respect to this specific offense." *Id.* at 638. The court reasoned:

> If the government proves that an accused had actual knowledge that a victim was incapable of consenting, then, by definition, such an accused could not simultaneously honestly have believed that the victim consented. Similarly, if the government proves that an accused should have reasonably known that a victim was incapable of consenting, the government has also proven any belief of the accused that the victim consented was unreasonable.
>
> In other words, we cannot imagine a logically coherent set of circumstances where the government has proven the elements of the offense and not simultaneously disproven any mistake of fact regarding consent. . . .
>
> There is no circumstance where appellant could have committed the charged offense, but nonetheless put in issue the affirmative defense of mistake of fact as to consent. *See* R.C.M. 916(a) (A defense "includes any special defense which, although not denying that the accused committed the objective acts constituting the offense charged, denies, wholly or partially, criminal responsibility for those acts.").

*Id.*; *see also United States v. Bannister*, No. 201600315, 2017 CCA LEXIS 361, at *10 (N.M. Ct. Crim. App. 31 May 2017) (unpub. op.) (quoting *Teague* with approval).

In the instant case, in order to establish Appellant's guilt of committing a sexual assault against A1C CS by concealment, the Government was required to prove Appellant "induced a belief" in A1C CS by "concealment" that Appellant was another person. The military judge instructed the members that "concealment" is "an act of refraining from disclosure or hiding to prevent discovery," and that "[s]ilence when [Appellant] knows that victim is acting under a misapprehension as to [Appellant's] identity may constitute concealment."

Either of the two potential mistakes of fact now asserted by Appellant—that Appellant believed A1C CS knowingly and consensually engaged in sexual intercourse with him, or that Appellant believed he was engaging in (presumably consensual) sexual intercourse with his fiancée—would necessarily disprove that Appellant refrained from disclosing his identity in order to prevent A1C CS's discovery that he was not who she thought he was, and thereby induced in A1C CS a belief that he was another person. If Appellant in-

duced by concealment a belief in A1C CS that Appellant was someone else, he could not have simultaneously believed A1C CS was consenting to sexual intercourse *with Appellant*.[9] Similarly, if Appellant knew A1C CS was acting under a misapprehension as to his identity and concealed his identity from her by his silence, he could not have also believed she was his fiancée.[10] In other words, by proving the elements of the charged offense, the Government necessarily disproved the existence of either asserted mistake of fact. *See Teague*, 75 M.J. at 638.

Thus mistake of fact as to consent was not "in issue" as a special defense in the instant case, and therefore a specific instruction on mistake of fact was not required under R.C.M. 920(e)(3). Again, this is not to say that the existence of a mistaken belief was irrelevant to Appellant's guilt or innocence. On the contrary, mistake as to consent was one of the theories the Defense explicitly advocated at trial. The point is that the existence of such a mistaken belief on Appellant's part would have disproved an element of the charged offense. If the members had a reasonable doubt as to the existence of such a mistaken belief, applying the instructions the military judge provided them, they would have found Appellant not guilty of sexual assault.

Our holding is not in conflict with *United States v. Curry*, 38 M.J. 77 (C.M.A. 1993), cited by our dissenting colleagues. In *Curry*, our superior court addressed whether the military judge erred in providing instructions regarding a defense of accident where the accused was charged with intentionally striking a superior commissioned officer. *Id.* at 77–78. The court did not hold that an instruction on the special defense of accident was required for a specific-intent offense; rather, it held the instructions the military judge actually provided were "confusing" and "misleading." *Id.* at 81. Significantly, the military judge instructed the members, *inter alia*, that "the defense of accident

---

[9] The dissenting opinion expresses concern that, without further instructions, the court members may have believed that Appellant's purported mistake as to A1C CS's consent must have been reasonable as well as actual. However, once the members determined the elements were proven beyond a reasonable doubt, there was no room for them to conclude Appellant was nevertheless mistaken as to A1C CS's consent, regardless of whether such a mistake was reasonable or not.

[10] As noted above, the military judge recognized that Appellant's statement to A1C CS that "I'm drunk[,] I thought you were my fiancé[e]," in conjunction with other evidence, raised the issue of voluntary intoxication, and the military judge provided an appropriate instruction to guide the members' deliberations with respect to this evidence.

does not lie in a specific intent offense as Specification 1 of Charge I [striking a superior commissioned officer], . . . ." *Id.* at 79. The court found:

> In this regard, the military judge's instructions were most confusing. By informing the members that "the defense of accident does not lie in a specific intent offense," the judge effectively told the members to disregard any accident evidence with respect to the charge of striking an officer. That is a completely misleading statement of law. Because it can amount to a total refutation of the intent element, accident can be a complete defense to any specific-intent offense.

*Id.* at 80.

Thus, unlike the instant case, the court in *Curry* was not deciding whether the defense of accident was operating as a "special defense" for purposes of R.C.M. 916 and R.C.M. 920(e) under the circumstances of the case. Rather, the court addressed the military judge's confusing and misleading instructions that suggested evidence of accident would be no defense at all to the charge of striking a superior commissioned officer. In the instant case, if the military judge had instructed the members that mistake was "not a defense" to the sexual assault Appellant was charged with, we would not hesitate to find plain error. But nothing of the kind occurred in this case. As we have emphasized, the Defense was free to argue that Appellant may have mistakenly believed A1C CS consented, and if the members had agreed, they would have found Appellant not guilty.

### c. Did the military judge abuse his discretion by declining to give a defense-requested instruction on mistake of fact?

The next step in our analysis is to determine whether the military judge abused his discretion by declining to give a defense-requested instruction regarding mistake of fact. *See Carruthers*, 64 M.J. at 345–46 (citations omitted). As stated above, we conclude Appellant failed to preserve this issue at trial, and accordingly we find no abuse of discretion. Assuming *arguendo* that Appellant did preserve the issue, we would still find no abuse of discretion under the three-part test set forth in *Carruthers*.

In order to find the military judge's decision not to provide a defense-requested instruction was error, we must find all three parts of the *Carruthers* test to be satisfied. *Barnett*, 71 M.J. at 253. In this case, we need not analyze the first two parts of the test because Appellant cannot satisfy the third part. The third part of the test requires us to determine whether the failure to give the instruction "deprived [the accused] of a defense or seriously impaired its effective presentation." *Carruthers*, 64 M.J. at 346 (citations omitted). The Defense was not so deprived or impaired in this case. As de-

scribed above, although mistake of fact as to consent did not operate as a "special defense" for purposes of R.C.M. 916 and R.C.M. 920(e), the question of whether Appellant believed A1C CS consented to the sexual act was manifestly relevant to the determination of his guilt. The Defense remained free to develop evidence of such a mistaken belief and to argue such evidence created a reasonable doubt that Appellant committed the acts constituting the charged offense, and trial defense counsel in fact did so. The military judge never suggested through his instructions or otherwise that the existence of such a belief was not relevant to the members' deliberations on findings. Again, employing the instructions provided by the military judge, if the members had a reasonable doubt as to the existence of such a mistake, they would have found Appellant not guilty of sexual assault.

Accordingly, we find no abuse of discretion and no plain error in the military judge's decision not to provide a defense-requested instruction regarding mistake of fact.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

LEWIS, Judge (concurring in part and dissenting in part and in the result), joined by Senior Judge HUYGEN, Judge DENNIS, and Judge POSCH:

I agree with the opinion of the court and my esteemed colleagues who found that the military judge did not abuse his discretion by excluding evidence under Mil. R. Evid. 412. I also agree that the military judge's instruction on concealment did not relieve the Government of its burden to prove each element of the sexual assault offense beyond a reasonable doubt. I respectfully dissent from the finding of no error when the military judge failed to instruct the members on mistake of fact as a defense.

## A. Specific Intent

At the outset, I determine that sexual assault by false pretense is a specific intent offense. The second element of the offense of which Appellant was convicted required the Government to prove beyond a reasonable doubt that Appellant induced a belief in Airman First Class (A1C) CS, by concealment, that he was another person. To satisfy this element of the crime, the inducing of a belief must have been a deliberate and knowing, or intentional, act of Appellant. The military judge defined "artifice" as "a plan or idea intended to

deceive;" "pretense" as "an act of pretending;" and "concealment" as "an act of refraining from disclosure or hiding to prevent discovery." The phrases "refraining from disclosure" and "hiding to prevent discovery" in the definition of concealment both connote a specific intent of deception.

Additionally, the military judge instructed the panel members on the permissive inference that "[s]ilence when [Appellant] knows that [A1C CS] is acting under a misapprehension as to [Appellant's] identity may constitute concealment." The military judge also explicitly acknowledged that Appellant's knowledge was an issue in the case. In discussing the voluntary intoxication instruction the military judge had decided to give, he noted that inducement "indicates some kind of knowledge" or "at least knowledge that [Appellant] engaged in artifice, concealment, trickery, or something like that." Still, the military judge provided no instruction on mistake of fact as a defense.

**B. Law**

Instructions on findings "*shall* include . . . [a] description of any special defense under [Rule for Courts-Martial] R.C.M. 916 in issue." R.C.M. 920(e)(3) (emphasis added). Mistake of fact is a "special defense" under R.C.M. 916(j). *United States v. Davis*, 76 M.J. 224, 228 (C.A.A.F. 2017). It "is a defense when it negatives the existence of a mental state essential to the crime charged." *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a), at 395 (2d ed. 2003) (additional citation omitted).

According to R.C.M. 916(j)(1):

> If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.

A special defense is "in issue" when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose." *United States v. Stanley*, 71 M.J. 60, 61 (C.A.A.F. 2012) (quoting *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007)); *United States v. Watford*, 32 M.J. 176, 178 (C.M.A. 1991) (quoting *United States v. Taylor*, 26 M.J. 127, 129–30 (C.M.A. 1988) (noting a defense is reasonably raised when there is "'some *evidence*' to which the [panel] members might attach credence"), *overruled in part on other grounds*, *Davis*, 76 M.J. at 226.

**C. Analysis**

The opinion of the court concludes that the Defense did not preserve the issue of instructional error and thus reviews the military judge's decision for plain error. "Under a plain error analysis, the accused 'has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014) (citation omitted). Assuming *arguendo* that plain error is the appropriate standard of review,[1] I conclude the military judge committed plain error by failing to provide a required instruction on mistake of fact as a defense.

To determine whether the military judge erred by not instructing on mistake of fact as a defense and whether that error was plain or obvious, one must understand that evidence of various mistakes of fact permeated Appellant's trial. To prove the charged offense, the Government had to prove beyond a reasonable doubt that A1C CS was mistaken about Appellant's identity. The members also had to reconcile evidence indicating Appellant may have been mistaken about two separate facts.

Evidence of Appellant's first possible mistake of fact arose from the testimony of A1C CS during direct examination. She recalled Appellant stating, "Oh s\*\*t. I am so sorry. I am so sorry. I'm drunk. *I thought you were my fiancé[e]*." (Emphasis added). The only instruction the military judge gave on this evidence was that it could be used for the limited purpose of its tendency, if any, to show Appellant's awareness of his guilt of the offense charged. Although the Government argued why this apparent mistake of fact was not a defense, Appellant did not choose to defend his case based on this possible mistake. Therefore, the military judge's failure to instruct on this mistake of fact as a defense, even if obvious error, did not materially prejudice a substantial right of Appellant and was not plain error.

Appellant's second possible mistake of fact was integrated fully into Appellant's defense. This possible mistake was whether Appellant mistakenly

---

[1] I assume without agreeing that plain error is the standard of review because of the facts and circumstances of the Defense's requests for instructions. I note that, prior to opening statements, the military judge stated, "I appreciate the *instructions that I received* from both sides. That will help me. In large part there is agreement. I know that one area's dispute has to do with defining some of the terms in the charged offense." (Emphasis added). The instructions the military judge "received" are not contained in the record of trial. We do not know whether either or both parties indicated a mistake of fact instruction was appropriate. We know that both parties discussed mistake of fact as a defense in their respective closing arguments.

believed that A1C CS knew she was having sex with him, not her boyfriend. In closing argument, the Defense used a visual aid to discuss evidence of this mistake with five points explaining why Appellant mistakenly believed that A1C CS knew she was having sex with him. Additionally, the evidence of A1C CS's knowledge of Appellant's identity was discussed by the parties and the military judge before he decided to admit certain evidence under Mil. R. Evid. 412 as described in the opinion of the court.

Considering the multiple mistakes of fact at issue in Appellant's case, we turn to the military judge's decision not to instruct the members on mistake of fact as a defense, even after the Defense requested that he do so. "Any doubt whether an instruction should be given should be resolved in favor of the accused." *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000) (citing *United States v. Steinruck*, 11 M.J. 322, 324 (C.M.A. 1981)). The military judge acknowledged the Defense's request by "trying to work through whether mistake of fact was a defense in this fact pattern." Instead, he should have resolved the matter in favor of Appellant and given the instruction. His failure to do so was error, and the error was obvious in the context of the multiple mistakes of fact discussed throughout Appellant's trial.

The opinion of the court draws the opposite conclusion and finds no error because mistake of fact was not a special defense "in issue" in Appellant's case under R.C.M. 920(e) and thus no instruction was required. The opinion of the court finds support for its position in decisions of other service courts of criminal appeals, holding that mistake of fact can never be a special defense "in issue" in a sexual assault when the other person is incapable of consent. *See, e.g., United States v. Teague*, 75 M.J. 636, 638 (A. Ct. Crim. App. 2016); *United States v. Bannister*, No. 201600315, 2017 CCA LEXIS 361, at *10 (N.M. Ct. Crim. App. 31 May 2017) (unpub. op.). Thus, the opinion of the court relies on an implicit finding that sexual assault by false pretense is analogous to sexual assault when the other person is incapable of consent. *United States v. Rich*, ___ M.J. ___, No. ACM 39224, slip. op. at 19–20 (A.F. Ct. Crim. App. 18 Jun. 2019). I find the analogy fundamentally flawed.

Sexual assault of a person incapable of consent has a statutory *mens rea* that the impairment, mental disease or defect, or physical disability is "known or reasonably should be known" to an accused. Article 120(b)(3), UCMJ, 10 U.S.C. § 920(b)(3). The Army court in *Teague* found that if the Government proved an accused had actual knowledge that a victim was incapable of consenting, then it also disproved the accused had an honest mistake of fact. 75 M.J. at 638. The Army court also found that if the Government proved the accused should have known of the victim's incapacity, then it proved any mistaken belief of the accused was unreasonable. *Id.*

I distinguish *Teague* on two grounds. First, our sister court was faced with a challenge to the factual and legal sufficiency of Teague's conviction under Article 120, UCMJ. *Teague* was a case decided by a military judge, so there were no member instructions to dissect on appeal.[2] Second, the sexual assault offense in *Teague* is a general intent crime. This means, to be a defense, the mistake of fact must have been both an honest belief in Teague's mind and an objectively reasonable belief under the circumstances. In Appellant's case involving a specific intent crime, the mistake of fact needed only to be an honest belief in Appellant's mind. This distinction is important, particularly with regard to prejudice as I discuss below.

I carefully considered whether *Teague* could or should be extended to conclude that mistake of fact is "baked into" the element of inducing a belief by concealment in a case of sexual assault by false pretense. *See* 75 M.J. at 638. While the military judge and trial defense counsel during Appellant's trial did not mention *Teague* or any other case involving mistake of fact as a defense, the record indicates that both understandably struggled with how mistake of fact as a defense applied. Indeed, this court is split on whether mistake of fact is a special defense "in issue." The conundrum is complicated by the lack of precedent, as the offense of sexual assault by false pretense is rarely seen in military appellate court decisions.[3] However any appellate judge decides what may seem to be a purely legal issue of instructional error, I ultimately base my determination of plain error on how the finder of fact evaluates the evidence, particularly when the factfinder is a panel of members. In Appellant's case, the members were given no instruction on how to consider mistake of fact as a defense. This absence of information on a purely legal matter is precisely why any doubt whether to give a mistake of fact instruction should have been resolved in favor of Appellant. *See Davis*, 53 M.J. at 205 (citation omitted).

Military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted). So in a trial before a military judge sitting alone, like *Teague*, an appellate court would presume, absent clear evidence

---

[2] *Bannister* was also a challenge on appeal to legal and factual sufficiency, but the conviction was decided by officer members. *Bannister*, unpub. op. at *1. There was no assignment of error and the opinion does not address whether the military judge failed to instruct or instructed on mistake of fact. *Id.*

[3] Research disclosed only *United States v. Miceli*, No. 201700062, 2017 CCA LEXIS 581 (N.M. Ct. Crim. App. 31 Aug. 2017) (unpub. op.), a case involving a guilty plea to sexual assault by false pretense under Article 120(b), UCMJ.

to the contrary, that the military judge knew how to assess any evidence of mistake of fact presented during the trial. The same presumption does not apply in a case tried before members, such as Appellant's.

Even if the opinion of the court is legally correct that disproving mistake of fact beyond a reasonable doubt is "baked into" the elements of sexual assault by false pretense (and thus mistake of fact is not a special defense "in issue" requiring an instruction), this does not mean a military judge is absolved of giving otherwise required instructions to court members. On this point, I consider informative our superior court's explanation of the defense of accident in *United States v. Curry*, 38 M.J. 77, 80 (C.M.A. 1993). The Court of Military Appeals (CMA) acknowledged that accident was listed as a defense in R.C.M. 916(f) and then explained that "[a]ccident, while loosely called an 'affirmative defense' is more accurately a 'substantive law defense which negatives guilt by cancelling out' one or more *mens rea* components." *Id.* (citations omitted). A claim of accident can only amount to an attack on an element since the "defense" cannot exist side by side with the Government's *prima facie* case. *Id.* at 80 n.4. In *Curry*, the CMA also compared the lay definition of "accident" with the legal definition of "accident" and found the latter was different and much narrower than the former. *Id.* at 80 n.5. Ultimately, the CMA determined that the accident instruction was required because it was raised by the evidence and reasoned that "a 'defense' of accident clearly *applies* to all allegations of assault" and "can be a complete defense to any specific-intent offense." *Id.* at 80. Although the plain error involved in *Curry* was the military judge's instruction to the members that the defense of accident did not apply, *Curry* held that an instruction is still required even when the evidence cancels out *mens rea*. I apply its rationale instead of *Teague*'s to Appellant's case.

Mistake of fact is a technical legal term with differing meanings based on the offense charged and its elements. Indeed, military judges are cautioned they "must carefully examine the elements of the offense, affirmative defenses, and relevant case law, in order to determine what standard applies to a mistake of fact instruction." *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27–9 at 1007 (10 Sep. 2014).[4] In Appellant's case, even if the need for a mistake of fact instruction was somehow in doubt at the conclusion of the presentation of the evidence, the military judge should have had no hesitation after hearing the closing arguments and how both parties argued the

---

[4] Mistake of fact as a defense to sexual assault is also mentioned in the model instructions for Article 120, UCMJ. *Benchbook*, at 578 n.10.

evidence of mistake of fact. The military judge should have realized an instruction on mistake of fact was necessary for the members to evaluate the evidence and decide if the elements of the offense had been proven. In the full context of Appellant's trial, the military judge's failure to instruct on mistake of fact was plain or obvious error.

I now turn to whether the error materially prejudiced Appellant and find that it did. Without proper instruction from the military judge, the members had no information on how to use the evidence of mistake of fact before they convicted Appellant. Any confusion was compounded as each side argued evidence of a different mistake. An instruction on mistake of fact would have served as guidance on the law to accompany the practical guidance of the instruction that members should use their "own common sense" in weighing and evaluating the evidence.

Taking a closer look at only the second mistake of fact—that Appellant mistakenly believed that A1C CS knew she was having sex with *him*—I find the error all the more prejudicial when the members applied only their common sense without the benefit of any instruction on mistake of fact. As discussed above, I find not only that an instruction on mistake of fact was required but also that Appellant's mistake of fact needed only be honest to constitute a defense to the charged sexual assault by false pretense. One of the facts relied on by trial defense counsel to present a defense of Appellant's mistake was the argument between A1C CS and her boyfriend that Appellant witnessed and that lasted throughout the night. During rebuttal argument, trial counsel, apparently sarcastically, questioned the premise of the defense as "Really? That's the heartbreaking argument that's going to cause [A1C CS] to go have sex with another man?" It is easy to see how one or more members could, using common sense alone and not being instructed on the defense of mistake of fact, reject Appellant's defense of an honest mistake after concluding his mistake was not reasonable.

I simply cannot find the verdict in Appellant's case would have been the same absent the military judge's failure to instruct on mistake of fact. *See Payne*, 73 M.J. at 25 (citing *Neder v. United States*, 527 U.S. 1, 8 (1999)). Appellant defended on mistake of fact as part of his trial strategy. He vigorously contested the Government's evidence, which was not overwhelmingly strong. Evidence of mistake of fact was critical to every aspect of this case for both Appellant and the Government. Absent evidence to the contrary, we presume that the members who decided Appellant's case followed the military judge's instructions. *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted). By following the only instruction they had to resolve questions of mistake of fact, which told them to just use their common sense, the members were not required to determine whether the Government

proved beyond a reasonable doubt that Appellant was not honestly mistaken A1C CS knew she was having sex with him. In my view, the military judge's failure to instruct the members on mistake of fact as a defense to the charged sexual assault by false pretense was plain error and requires that the findings and sentence be set aside and a rehearing authorized.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court