*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## Nikolas S. CASILLAS, Airman First Class
United States Air Force, Appellant

**No. 24-0089**
Crim. App. No. 40302

Argued January 14, 2025—Decided August 20, 2025

Military Judge: Colin P. Eichenberger

For Appellant: *Captain Samantha M. Castanien* (argued); *Major Spencer R. Nelson* (on brief); *Lieutenant Colonel Allen S. Abrams.*

For Appellee: *Captain Kate E. Lee* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel Jenny A. Liabenow,* and *Mary Ellen Payne,* Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge JOHNSON joined.

———————————

Judge HARDY delivered the opinion of the Court.

Airman First Class SF, the victim in this case, fell asleep after hosting a party in her apartment for a fellow servicemember. Appellant, Airman First Class Nikolas S. Casillas, remained in SF's apartment after most of the other guests went home. When SF woke up, Appellant was committing a sexual act upon her.

Under the theory that SF did not consent to the sexual act, the Government charged Appellant with two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2018).[1] A general court-martial convicted Appellant of one of those specifications and acquitted him of the other. The United States Air Force Court of Criminal Appeals (AFCCA) affirmed. *United States v. Casillas*, No. ACM 40302, 2023 CCA LEXIS 527, at *25, 2023 WL 8678806, at *9 (A.F. Ct. Crim. App. Dec. 15, 2023) (unpublished).

Before this Court, Appellant challenges multiple aspects of his conviction. First, Appellant brings both facial and as-applied challenges to the constitutionality of Article 120(b)(2) and (g)(7), UCMJ. Second, Appellant argues that his conviction was legally insufficient. Third, Appellant argues that the military judge abused his discretion when he denied Appellant's challenges of a panel member for actual and implied bias. And finally, Appellant raises two issues related to 18 U.S.C. § 922, a provision of the Gun Control Act of 1968 that restricts the Second Amendment rights of various categories of people, including people convicted of certain crimes.[2]

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] The Court granted review of the following six issues:

> I. Whether Article 120(b)(2) and (g)(7), Uniform Code of Military Justice, 10 U.S.C. §§ 920(b)(2) and (g)(7), are unconstitutionally vague because

In light of this Court's opinion in *United States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024), we deny Appellant's constitutional challenges to Article 120, UCMJ. We also reject Appellant's challenge to the legal sufficiency of his conviction because there was a period during the sexual assault—after the victim awoke—when the victim was capable of consenting, but she did not consent to sexual activity.

With respect to Appellant's challenge of Chief Master Sergeant (CMSgt) AG, a panel member, for actual and implied bias, we conclude that the military judge did not err in denying those challenges. Finally, in accordance with

---

they fail to put defendants on fair notice of the specific charge against them.

II. As applied, whether Article 120(b)(2) and (g)(7), Uniform Code of Military Justice, 10 U.S.C. §§ 920(b)(2) and (g)(7), gave Appellant constitutional fair notice when the military judge denied defense counsel's request for a tailored jury instruction.

III. Whether Appellant's conviction for sexual assault without consent was legally sufficient.

IV. In a sexual assault trial, did the military judge abuse his discretion when he denied the accused's challenge for actual and implied bias for a member whose wife had been raped?

V. Whether the United States Court of Appeals for the Armed Forces has jurisdiction to direct modification of the 18 U.S.C. § 922 prohibition noted on the Staff Judge Advocate's indorsement to the entry of judgment.

VI. As applied to Appellant, whether the Government can prove 18 U.S.C. § 922 is constitutional by "demonstrating that it is consistent with the nation's historical tradition of firearm regulation" when he was not convicted of a violent offense (quoting *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 24 (2022)).

*United States v. Casillas*, 84 M.J. 477 (C.A.A.F. 2024) (order granting review).

this Court's decision in *United States v. Johnson*, __ M.J. __ (C.A.A.F. 2025), we decide that because this Court lacks the authority to act on the § 922 indication in the Entry of Judgment (EOJ), Appellant's constitutional challenge to 18 U.S.C. § 922 is moot. Accordingly, we affirm the judgment of the AFCCA.

## I. Background

## A. Factual Background

SF, the victim in this case, held a birthday party at her apartment for ZM, a fellow servicemember. SF invited HC, also a servicemember, to the party, and HC in turn invited Appellant. MM, a civilian, was also present. During the party, SF became intoxicated. After the party, Appellant, ZM, and MM stayed in SF's house. HC left but came back after SF told her she didn't want Appellant at her house.

When HC came back to SF's apartment, HC asked SF if she was okay with Appellant being there, at which time SF at first did not answer, but then mumbled something to the effect that it was okay. After HC also talked to Appellant, who said he would be leaving within half an hour, HC left the apartment again.

After HC left the house, SF was feeling "super woozy" and "really tired." SF lay down on her bed, and at that time, MM was also on her bed. After SF fell asleep, MM moved to sleep in another room. Later, SF woke up to Appellant penetrating her vulva with his penis. At trial, SF testified that in the moment she was awake, she did not consent to this. After SF woke up, Appellant pulled up SF's pants and went to the bathroom. After Appellant came out of the bathroom, SF went into the bathroom to call her friend ES, another servicemember, to ask him to come over to get Appellant out of the house. SF testified that she called ES—"someone scary" and "a big dude"—because she was afraid and there was no better person to kick someone out of her apartment. After ES arrived, Appellant left at ES's direction.

**B. Voir Dire and Panel Member Challenge**

During group voir dire, CMSgt AG, a potential panel member, revealed that he had a family member who had been the victim of an offense similar to the one charged in this case. During individual voir dire, CMSgt AG disclosed that his wife had been raped about thirty years prior to the court-martial. The military judge asked CMSgt AG a series of questions about the circumstances of the rape, how often he and his wife spoke about it, and how the knowledge of what his wife went through affected him personally. The military judge then asked whether CMSgt AG could be impartial despite having a wife who had been a victim of rape, and CMSgt AG stated that he could. The military judge asked CMSgt AG to explain, in his own words, why he believed that he could be impartial, and CMSgt AG said:

> I think that any incident that is separate from another incident—you know, this we've lived with for a long time and I think we've processed it. And I just think—I think I can separate that incident from basically any other incident that I might hear of or try to assess, I guess, for lack of a better word.

He provided a similar response when asked why he thought this would not have any impact on his determinations if this case reached the sentencing stage. After voir dire, trial defense counsel brought a for-cause challenge against CMSgt AG as a panel member for actual and implied bias. The military judge denied this challenge on both grounds.

**C. Requested Instruction, Findings, and Sentence**

Before trial, trial defense counsel requested the following special instruction to the panel:

> You have heard evidence that [SF] consumed alcohol on the night in question and she may have been in some state of intoxication during the alleged sexual events at issue. You may have previously attended sexual assault training or briefings in which the topic of consumption of alcohol and sex was addressed. In this sexual training or briefings, you may have been informed that women

> who are drinking or intoxicated are not capable of consenting to sex. That is a misstatement of the law. You are only to follow the law as I instruct you, and not be influenced in any way by training or briefings you may have received outside this courtroom. That is particularly important as it is possible the sexual assault training or briefings you have attended were not consistent with the law. In this case, there is no allegation that [SF] was too intoxicated to consent to sex. You are not permitted to consider whether she was too intoxicated to consent to sex. That is not an issue before you.

The military judge denied this instruction, stating that "[t]he Court does not find the instruction as written to be an accurate statement of the law."

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, UCMJ, for "penetrating [SF's] vulva with his penis, without her consent." He was acquitted of a second specification of sexual assault in violation of Article 120, UCMJ, for "penetrating [SF's] vulva with his finger, with an intent to gratify his sexual desire, without her consent." The military judge sentenced Appellant to two years of confinement, a dishonorable discharge, reduction to E-1, and forfeiture of all pay and allowances.

## II. Constitutional Challenges to Article 120, UCMJ

The Government charged Appellant with violating Article 120, UCMJ, without specifying a specific subsection of that provision that Appellant violated. The specific subsection is important because in *Mendoza*, this Court rejected the government's argument that Article 120 creates broadly overlapping offenses that give the government multiple ways to charge a criminal act. 85 M.J. at 215 (holding that Article 120(b)(2)(A), UCMJ, and Article 120(b)(3)(A), UCMJ, established distinct offenses with separate theories of liability). Based on the language of the specification—that Appellant "commit[ted] a sexual act upon [SF] by penetrating her vulva with his penis, without

her consent"—we agree with Appellant that he must have been charged with violating Article 120(b)(2)(A), UCMJ. *See MCM* pt. IV, para. 60.e.(2)(d); *see also MCM* pt. IV, para. 60.b.(2)(d) (laying out the elements of sexual assault without consent). As we held in *Mendoza*, Article 120(b)(2)(A), UCMJ, "criminalizes the performance of a sexual act upon a victim who is capable of consenting but does not consent." 85 M.J. at 220.

Appellant makes two constitutional challenges to his conviction: first, a facial challenge to the constitutionality of Article 120(b)(2), UCMJ, and second, a challenge to the constitutionality of Article 120(b)(2), UCMJ, as applied to him because the military judge denied trial defense counsel's proposed limiting instruction.

### A. Standards of Review

We review the constitutionality of a statute de novo. *United States v. Medina*, 69 M.J. 462, 464 (C.A.A.F. 2011). To succeed in a facial challenge, an appellant must establish that no set of circumstances exists under which the Article would be valid. *United States v. Castillo*, 74 M.J. 160, 162 (C.A.A.F. 2015); *United States v. Salerno*, 481 U.S. 739, 745 (1987).[3]

We also review questions of statutory interpretation de novo. *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017). This Court reviews a military judge's decision to deny a requested instruction for abuse of discretion, applying a three-pronged test: (1) whether the requested

---

[3] Although this Court has endorsed the "no set of circumstances" test from the Supreme Court's decision in *Salerno*, we acknowledge that the Supreme Court itself has debated whether that is the correct standard for facial challenges. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) ("While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a plainly legitimate sweep." (citation omitted) (internal quotation marks omitted)). Our decision in this case would be the same if we applied the "plainly legitimate sweep" test.

instruction is correct; (2) whether it is substantially covered in the main instruction already given; and (3) whether it is on such a vital point in the case that the failure to give the instruction deprives the accused of a defense or seriously impairs its effective presentation. *United States v. Carruthers*, 64 M.J. 340, 345-46 (C.A.A.F. 2007). All three prongs must be satisfied for there to be reversible error. *United States v. Barnett*, 71 M.J. 248, 253 (C.A.A.F. 2012).

## B. Discussion

After this Court issued its decision in *Mendoza*, we invited the parties in this case to file supplemental briefs addressing the constitutionality of Article 120, UCMJ, in light of that decision. In Appellant's supplemental brief, he argues that Article 120, UCMJ, remains facially unconstitutional because Congress's definition of consent in Article 120(g)(7), UCMJ, allows military judges to instruct on improper theories of liability and allows factfinders to convict on uncharged theories. We disagree.

In *Mendoza*, we held that Article 120(b)(2)(A), UCMJ, only applies to sexual assaults upon victims who are capable of consenting and clarified that the government may not charge one offense under one factual theory and then argue a different offense and a different factual theory at trial. 85 M.J. at 220. Thus, the government must choose which Article 120 offense it intends to charge, give the accused notice of that choice in the charge sheet, and pursue that same offense at trial. With the government now on notice that Article 120(b)(2)(A), UCMJ (sexual assault without consent), is not an umbrella offense that includes every other type of sexual assault in which the victim is incapable of consenting, we believe that there are many circumstances under which Article 120, UCMJ, can be validly applied. Accordingly, Appellant's facial challenge to Article 120, UCMJ, must fail.

With respect to his as-applied challenge, Appellant argues that the Government violated his right to due process by arguing a different factual theory than the one it charged, and then the military judge exacerbated that

error by denying his requested instruction. Appellant's argument is based on the fact that the sexual assault began when SF was asleep, a fact that the Government referenced repeatedly at trial. In Appellant's view, this case is therefore analogous to *Mendoza*, because the Government charged him with one offense—committing a sexual act upon another without consent in violation of Article 120(b)(2)(A), UCMJ—but obtained a conviction by arguing a different offense at trial: committing a sexual act upon a person who is asleep in violation of Article 120(b)(2)(B), UCMJ.

Appellant's argument fails because SF awoke during the sexual assault, creating a period when Appellant was penetrating her vulva with his penis while she was awake and capable of consenting. This is exactly the offense and factual theory that the Government charged, giving Appellant sufficient notice of what he needed to defend against. Nothing in Congress's definition of consent in Article 120(g)(7), UCMJ, prohibited the Government from proving that—at least for a brief time after SF awoke—Appellant committed the charged sexual act upon SF and that SF did not consent to that act.

This remains true even though the military judge denied trial defense counsel's request for a tailored instruction. Had the military judge instructed the panel as trial defense counsel requested, the panel would have been instructed that they were "not permitted to consider whether she was too intoxicated to consent to sex." But that instruction is not an accurate statement of the law. When an accused is charged with a violation of Article 120(b)(2)(A), UCMJ, "[n]othing in the article bars the Government from offering evidence of an alleged victim's intoxication to prove the absence of consent." *Mendoza*, 85 M.J. at 222; *see also* Article 120(g)(7)(C) ("All the surrounding circumstances are to be considered in determining whether a person gave consent."). To be clear, in *Mendoza*, we prohibited the government from proving the *absence* of consent by "merely establishing that the victim was too intoxicated to consent." 85 M.J. at 222. But

here, the proposed instruction would have foreclosed the panel from even *considering* the extent of the victim's intoxication, and neither Article 120, UCMJ, nor our case law endorses that result. Because the proposed instruction fails the first prong of the *Carruthers* test, 64 M.J. at 346, the military judge did not abuse his discretion in denying the instruction.[4]

### III. Legal Sufficiency Analysis

### A. Standard of Review

We review the question whether a conviction was legally sufficient de novo. *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014)).

### B. Discussion

In this case, to establish that Appellant violated Article 120(b)(2)(A), UCMJ, the Government was required to prove: (1) that the accused committed a sexual act upon the victim, and (2) that the victim did not consent to that sexual act. *MCM* para. 60(b)(2)(d)(i)-(ii). Consistent with our decision in *Mendoza*, 85 M.J. at 220, because Article 120(b)(2)(B), UCMJ, establishes a separate offense for committing a sexual act upon a person who is asleep, the Government could not prove lack of consent by establishing that the victim was asleep at the time of the act. However, viewing the evidence presented at trial in the light most favorable to the Government, we conclude that a rational trier of fact could have found that the Government established the Article 120(b)(2)(A) offense beyond a reasonable doubt.

---

[4] Because all three prongs must be satisfied in order for this Court to find reversible error, the Court need not address the other two prongs. *Barnett*, 71 M.J. at 253.

SF testified that, before she fell asleep, she felt "super woozy" and sick to her stomach. Feeling as though she couldn't keep her eyes open, she lay down on her bed next to MM. SF testified that before falling asleep, she never told Appellant—who at that time was sitting on the couch—that he could pull down her pants or penetrate her vulva. SF further testified that she woke up to Appellant's penis in her vagina. SF stated that she did nothing to reciprocate Appellant's actions, that she did not want him to be penetrating her, and that she did not consent to it. SF recalled Appellant getting up off of her, pulling up her pants, and going to the bathroom. SF testified that she "wanted to get up and run away," that she was afraid, and that she went into the bathroom to call her "big" and "scary" friend so that he would kick Appellant out of her apartment.

Critically, SF's testimony establishes that she was awake and aware of what was happening for at least a short time when Appellant was penetrating her, as alleged in the specification. During that period, the evidence supports the rational conclusion that SF had the capacity to consent, but that she did not consent to the sexual act. Accordingly, a rational trier of fact could have found the essential elements of the Article 120(b)(2)(A) offense beyond a reasonable doubt.

### IV. Panel Member Challenge

#### A. Standard of Review

Article 41(a)(1), UCMJ, 10 U.S.C. § 841(a)(1) (2018), provides that "[t]he military judge and members of a general or special court-martial may be challenged by the accused or the trial counsel for cause stated to the court." This Court reviews a military judge's decision to reject a challenge made on actual bias grounds for abuse of discretion. *United States v. Hennis*, 79 M.J. 370, 384 (C.A.A.F. 2020). Our review of implied bias challenges, in contrast, is "less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Keago*, 84 M.J. 367, 372 (C.A.A.F. 2024) (citation omitted) (internal

quotation marks omitted).[5] This is because while "[a]ctual bias is defined as 'bias in fact,' " *Hennis*, 79 M.J. at 384 (citation omitted), "the test for implied bias is an objective one that is only partially based on the military judge's credibility determinations and findings of fact," *Keago*, 84 M.J. at 372. As this Court explained in *Keago*:

> A military judge who cites the correct law and explains his implied bias reasoning on the record will receive greater deference (closer to the abuse of discretion standard), while a military judge who fails to do so will receive less deference (closer to the de novo standard). Accordingly, the more reasoning military judges provide, the more deference they will receive.

*Id.* at 373 (citing *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016)). If a military judge finds an implied bias challenge to be a close question, the challenge must be granted under this Court's "liberal grant mandate." *Id.* at 372 (citing *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015)).

## B. Discussion

Appellant argues that CMSgt AG could not serve as an impartial panel member in a sexual assault case (and the public would reasonably doubt his impartiality) because his wife was the victim of a rape about thirty years earlier. This particular concern—that a member's exposure to a crime similar to the one to be litigated before them will cause the member to be (or appear to be) biased—is an issue that this Court has addressed many times. *See United States v. Terry*, 64 M.J. 295, 303-04 (C.A.A.F. 2007) (collecting cases). Two key principles we have recognized in these cases are that: (1) the fact that a member was close to someone who had been a victim of a similar crime is not grounds for per se disqualification; and (2) regardless of a

---

[5] Appellant has invited this Court to disregard its current standard for reviewing implied bias challenges and instead review military judges' denials of implied bias challenges de novo. Brief for Appellant at 45, *United States v. Casillas*, No. 24-0089 (C.A.A.F. July 22, 2024). We decline his invitation.

member's prior exposure to a crime, it is often possible for a member to rehabilitate himself before the military judge by honestly claiming that he would not be biased. *Id*. at 303.

CMSgt AG's situation in this case is very similar to the one presented to this Court in *Terry*. There, potential panel member Maj H's wife had been sexually assaulted as a teenager between ten and twenty years before the court-martial and before Maj H and his wife had ever met. 64 M.J. at 304. Maj H and his wife had discussed the event only a few times, and not in the past five years. *Id*. at 303-04. In the absence of any exacerbating circumstances—such as a particularly violent or traumatic crime—the Court held that the military judge did not abuse his discretion in finding no actual bias. *Id*. Similarly, the Court concluded that there were "a number of factors in Maj H's situation that tend[ed] to ameliorate his exposure to the crime, dispelling the appearance of implied bias." *Id*. at 304.

Here, CMSgt AG's wife had been a rape victim thirty years prior to the trial, a longer time period in comparison to the panel member's wife in *Terry*. As in *Terry*, CMSgt AG and his wife discussed the incident very rarely, only two or three times over three decades. CMSgt AG explained why he thought he could be an impartial panel member and stated that he would not have a problem telling his wife if the panel were to find the defendant not guilty.

The military judge observed CMSgt AG's body language and demeanor during voir dire and rejected defense counsel's suggestion that they indicated that CMSgt AG was excessively emotionally impacted by his wife's rape or was being less than truthful in his voir dire responses. To the contrary, the military judge found CMSgt AG's body language and demeanor to be "clearly indicative of his thoughtfulness of the questions asked [and] his desire to answer them as candidly as possible." Based on CMSgt AG's "candid and credible" responses, the military judge found that CMSgt AG had no actual bias. The

military judge separately considered whether CMSgt AG's participation in the court-martial would damage the public's perception of fairness in the military justice system and concluded that it would not. Even considering the liberal grant mandate, the military judge denied Appellant's challenge for implied bias, describing the question as not "a particularly close call."

We find nothing about CMSgt AG's answers during voir dire, or the circumstances of his wife's prior experience with sexual assault, that gives us cause to deviate from our precedent in *Terry*. This is especially true given that the military judge in this case: (1) placed his observations of CMSgt AG's body language, demeanor, and credibility on the record; (2) identified that implied bias is an objective standard; (3) explained his reasoning on the record, including why these circumstances would not "do damage to this trial, in the eyes of the public in the perception of fairness" in our system of military justice; and (4) expressly took the liberal grant mandate into consideration in finding that the implied bias question was not a close call. Given that well-developed record, we conclude that the military judge did not abuse his discretion in denying Appellant's challenge for actual bias. Furthermore, we agree with the military judge that Appellant's implied bias challenge was not a close call and find it appropriate, under these circumstances, to defer to the military judge's denial of Appellant's implied bias challenge.[6]

### V. 18 U.S.C. § 922 Challenges

The EOJ in Appellant's case indicates that the finding of guilty in his general court-martial subjects him to

---

[6] Appellant asserts that the military judge's voir dire of CMSgt AG was insufficient. However, as Appellant acknowledges, the military judge permitted trial defense counsel to ask additional follow-up questions to explore any inadequate responses. Therefore, we find no error on the part of the military judge. *See United States v. Wiesen*, 57 M.J. 48, 49 (C.A.A.F. 2002) (per curiam) (citing cases) ("[T]he burden of establishing grounds for a challenge for cause rests upon the party making the challenge.").

restriction of his Second Amendment rights under 18 U.S.C. § 922, a provision of the Gun Control Act of 1968. Appellant argues that 18 U.S.C. § 922 is unconstitutional as applied to him and urges this Court to modify the EOJ to remove the § 922 indication.

In *Johnson*, we recently held that this Court lacks authority to act on the § 922 indication in an appellant's EOJ. __ M.J. at __ (8-9) (holding that neither Article 67(c)(1)(A), UCMJ, nor Article 67(c)(1)(B), UCMJ, gives this Court authority to act on the § 922 indication). Accordingly, Appellant's constitutional challenge to 18 U.S.C. § 922 is moot.

## VI. Conclusion

For the foregoing reasons, the judgment of the United States Air Force Court of Criminal Appeals is affirmed.